Samuel **BAUDER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 04–93–00725–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 30, 1996.

Rehearing Overruled Nov. 22, 1996.

Mark Stevens, John Hrncir, San Antonio, for Appellant.

Margaret M. Fent, Assistant Criminal District Attorney, San Antonio, for Appellee.

Before RICKHOFF, STONE and DUNCAN, JJ.

## OPINION

RICKHOFF, Justice.

Appellant, Samuel Bauder ("Bauder"), is charged with a misdemeanor, driving while intoxicated. We affirmed the lower court's denial of Bauder's petition for pretrial writ of habeas corpus and held that Bauder's trial was not jeopardy barred under the Texas and United States Constitutions after a mistrial was granted in an earlier trial at Bauder's request.[1] *Bauder v. State*, 880 S.W.2d 502 (Tex.App.—San Antonio 1994), *rev'd*, 921 S.W.2d 696 (Tex.Crim.App.1996). The mis-

trial was granted after the arresting officer graphically testified on direct examination that Bauder was engaged in a sex act in the parked car before his arrest. The Court of Criminal Appeals granted petition for discretionary review and, after a rather testy revisit of the *Heitman*[2] debate, reversed our holding while adopting a new standard for reviewing the double jeopardy claim under our Texas Constitution. *Bauder v. State*, 921 S.W.2d at 700. That court then remanded the cause to this court for reconsideration under the newly established analytical construct. *Id.*

■ As we understand the *Bauder* decision, where a defendant contends a motion for mistrial was intentionally provoked by the prosecution thereby constitutionally barring a subsequent trial, a two-step analysis must be followed. *See id.* at 699. First, we must determine whether the trial judge "need not have granted the defendant's motion" for mistrial. *Id.* This first step in the analysis is necessary because the prosecutor can only be accountable for a mistrial if the mistrial was properly granted. *Id.* Second, we must determine whether the prosecutor either intended to induce the mistrial or "was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request." *Id.* Thus, in the final analysis, the prosecutor is only accountable for mistrials that are: (1) properly granted; and (2) made necessary by events of the prosecutor's own "deliberate or reckless doing." *Id.*

■ We now turn in our review to the first step in the analysis to determine whether the trial judge "need not have granted" Bauder's motion for mistrial. In analyzing the trial judge's ruling, we must first consider the evidence preceding the objectionable statement by the officer.

The mistrial was granted during the testimony of the first witness, the arresting officer John Thomas. The officer testified that he approached a vehicle parked at the end of

---

1. U.S. CONST. amend V; TEX. CONST. art. I, § 14.

2. *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim. App.1991).

a cul-de-sac while on routine patrol looking for stolen vehicles. The officer did not observe any occupants sitting in the vehicle when he initially approached, but after turning on his lights, he saw a male and female "pop up." As the officer was stepping out of his patrol unit, the driver began to drive off, striking the patrol unit and continuing down the street. The officer pulled the vehicle over and opened the car door. The officer testified that the driver's pants were undone and the driver could barely stand. The officer further testified that the driver smelled strongly of alcohol, had slurred speech and was unable to perform the field sobriety tests. The officer placed the driver in the patrol unit and transported him to the Bexar County ASAP room for an intoxilyzer test.

When the prosecutor asked the officer if he knew what Bauder was doing when he first approached the vehicle, the officer stated that he did not; however, in response to the prosecutor's inquiry as to whether the officer later found out what was going on, the officer stated that the passenger told him "they were just messing around." At that point, the trial judge sustained the defense counsel's hearsay objection, after which the following testimony was elicited:

Q. Did you know what was going on?

A. Yes, sir.

THE COURT: From your own personal knowledge, do you know what was going on?

THE WITNESS: Yes, sir.

THE COURT: "Personal knowledge" means your own observations.

THE WITNESS: Yes.

Q. And what was going on at the end of Raintree Path?

The officer then used a two-word earthy patois to describe a sex act.

Bauder's trial counsel immediately moved for a mistrial stating that no instruction could cure the error. The State argued that the error could be cured by instructing the jury that they were not to consider the officer's testimony regarding what was going on

because he had no personal knowledge. The trial court chose to grant the mistrial rather than instruct the jury. We find he chose poorly.

The Court of Criminal Appeals noted at the outset in its opinion in *Bauder* that mistrials are "an extreme remedy for prejudicial events occurring during the trial process." 921 S.W.2d at 698. The court asserted that mistrials should be granted only when "an objectionable event is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant." *Id.* After adopting the new standard of review, the court then repeated that "conditions calling for the declaration of a mistrial before submission of a case to the jury should be considered very unusual in any adversary system." *Id.* at 700. The court further asserted: "[b]ecause curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted under Texas law." *Id.* The court concluded that "the line between legitimate adversarial gamesmanship and manifestly improper prosecutorial methods should be difficult for most prosecuting attorneys to cross unless they do it on purpose." *Id.* The court then declined to express an opinion "as to whether the prosecutor crossed that line in the instant case," but instead remanded the case to us to make that determination. *Id.*

Having set the stage for the first step in the analysis by the above-language noting that a mistrial should rarely be granted but having declined to render an opinion thereon, the Court of Criminal Appeals asks us to determine whether the trial judge "need not have granted the defendant's motion." *Id.* at 699. After discussing the announced standard at length and questioning counsel regarding its proper interpretation at oral argument, we are of the opinion that the court is asking us to determine whether the trial court would have abused its discretion if it had denied Bauder's motion for mistrial.[3]

3. Since we on the intermediate level, fortunately, have been freed from the heady responsibility of

debating *Heitman* with such intensity and are merely charged with implementing decisions, we

Thus, we must decide whether any reasonable view of the record supports not granting the mistrial. In evaluating this issue, we must consider whether an instruction similar to the one requested by the State would have cured the potential prejudice arising from the officer's statement.

■ As previously noted, "our system presumes that judicial admonishments to the jury are efficacious." *Id.* at 698. This presumption is applicable where the instruction follows a violation of a motion in limine. *Lynn v. State*, 860 S.W.2d 599, 604–05 (Tex. App.—Corpus Christi 1993, pet ref'd).

We note that instructions to disregard often have been held to cure references to evidence that was of greater prejudicial effect than the statement in the instant case, including references to extraneous offenses for which the defendant was sentenced to the penitentiary. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App.1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2361, 124 L.Ed.2d 268 (1993); *Gardner v. State*, 730 S.W.2d 675, 696–97 (Tex.Crim.App.), *cert. denied*, 484 U.S. 905, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987). Unlike those cases, the officer's statement in the instant case would likely have had a minimal impact given the other evidence introduced without objection. Although all of the jurors may not have reached as graphic of an inference as the officer, the officer's observations preceding Bauder's arrest, which were already in evidence, would tend to lead most jurors to a similar inference. It is unlikely modern era jurors would conclude that a young man and woman parked alone at night at the end of a cul de sac were reciting poetry. Therefore, we believe the trial court could have cured the potential prejudice, if any, arising from

the officer's statement by instructing the jury that the officer did not have personal knowledge on which to base his statement, that his statement was therefore speculative, and that the jury was to disregard his statement. *See Lynn*, 860 S.W.2d at 604 (reference to shoplifting charge not grounds for mistrial where officer testified as to lack of personal knowledge). Our conclusion that the potential prejudice would be cured by such an instruction is further supported by the questions propounded by the trial court with respect to the officer's personal knowledge immediately preceding the officer's statement. We presume the jurors would follow the instruction particularly in this case since they knew that the statement was made after the trial court already emphasized that the officer needed personal knowledge to support his conclusion.

## CONCLUSION

Because we conclude that the trial court "need not have granted" Bauder's motion for mistrial, *Bauder*, 921 S.W.2d at 699, we hold Bauder's subsequent trial was not jeopardy barred. For this reason, the judgment of the trial court, denying Bauder's petition for pretrial writ of habeas corpus, is affirmed.

DUNCAN, J., concurring in the judgment only.

---

take the express language from *Bauder* literally. We have, however, found this newly announced standard of review troubling because it ignores the trial court's findings. This is something to which we are not accustomed. From the record, it appears the trial court granted the mistrial in a fit of pique because the witness ignored the court's admonishment that "Personal knowledge means your own observations." Although we recognize that the State is required to instruct its witnesses not to discuss inadmissible matters, *see Hadden v. State*, 829 S.W.2d 838, 843 (Tex. App.—Corpus Christi 1992, pet. ref'd), that re-

sponsibility does not lead us to immediately conclude that the statement held inadmissible in the instant case was so prejudicial as to warrant a mistrial, particularly in view of the fact that the trial court itself had admonished the witness not to testify regarding matters without personal knowledge. *Cf. Stoker v. State*, 788 S.W.2d 1, 14 (Tex.Crim.App.1989)(no prosecutorial misconduct resulted where witness gave unresponsive answer to legitimate question and referred to extraneous offense), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990).