**Ex parte Stephen Phillip PRIMROSE, Jr.**

No. 2–97–079–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 14, 1997.

Ricky B. Perritt, Denton, for Appellant.

Bruce Isaacks, Criminal District Attorney, Kathleen A. Walsh, Roger Jones, Paul Johnson, Heather Rattan, Assistant District Attorneys, Denton, Matthew Paul, State Prosecuting Attorney, Austin, for Appellee.

Before LIVINGSTON, DAUPHINOT and RICHARDS, JJ.

## OPINION

LIVINGSTON, Justice.

The sole issue in this appeal is whether appellant's capital murder prosecution is jeopardy barred after a State's witness in appellant's first trial invoked his right to remain silent after giving direct testimony and appellant's request for a mistrial was granted. Because we find that a mistrial was not necessary at appellant's request, we affirm the habeas court's denial of relief.

## I. BACKGROUND

In appellant's first trial for the capital murder of Sharon Oliver, the State called former co-defendant Andrew Hood. Hood testified that he had been charged with the

capital murders of Stephen Conner and Sharon Oliver. As part of a plea agreement, Hood pled guilty to two counts of murder and agreed to testify truthfully at appellant's trial. When called by the State as a witness against appellant, Hood testified that he alone committed both murders and that his testimony at his plea hearing and statements he gave to the police implicating appellant were false. When the prosecutor asked Hood to describe how he murdered both victims, Hood refused to answer the question. The court then instructed the jury to retire to the deliberations room and the remainder of the proceeding was held outside the presence of the jury.

The trial court admonished Hood that he would be held in contempt if he continued to refuse to answer the prosecutor's questions. Hood was then appointed counsel and was allowed to consult with him. When Hood returned to the stand, he again refused to discuss the details of the murders. The trial court held Hood in contempt and sentenced him to six months in the Denton County Jail.

The prosecutor then asked Hood several more questions concerning the details of the murders. Hood testified that he killed Conner and Oliver by stabbing them each once with a knife. The trial judge ruled that Hood had complied with his instruction to answer the prosecutor's questions and lifted his order of contempt.

The trial judge then asked the prosecutor, appellant's counsel, and Hood's court-appointed counsel whether Hood was subject to prosecution for perjury based on inconsistencies between his trial testimony and testimony given at his plea hearing. The prosecutor stated: "I said that's always a possibility. I never indicated one way or the other." Hood's court-appointed counsel confirmed that "it was recommended that I advise [Hood] as to the consequences of committing perjury."

After the trial judge briefly admonished Hood of his rights under the fifth and sixth amendments, he granted two more recesses for Hood to consult with his court-appointed counsel. When Hood returned to the stand, he told the trial judge that he chose to remain silent if he was going to be subject to perjury charges.

Appellant then moved for a mistrial on the grounds that Hood's invocation of his fifth amendment rights deprived him of his right to due process and his right to confront witnesses against him. The trial judge granted appellant's request for a mistrial. Appellant then took the stand and testified that he had been admonished by his counsel that the State would still be able to prosecute him, that the facts could change drastically in his second trial, and that it was his decision to move for a mistrial.

Appellant filed an application for writ of habeas corpus asserting that a second trial on the charge of capital murder was jeopardy barred because he was forced to request a mistrial after "a key witness for the State, after answering numerous questions by the prosecutor, refused to continue testifying when threatened with perjury." The trial court granted a hearing on appellant's writ.

At the writ hearing, the two prosecutors from appellant's first trial testified that they had met with Hood twice before trial, that during these interviews Hood "never wavered" in his statements that he killed Oliver and appellant killed Conner, and that they had no reason to believe Hood would refuse to answer questions at trial. Additionally, one of the prosecutors stated that during a recess he informed Hood's court-appointed counsel that perjury charges were a possibility. Finally, Hood's court-appointed counsel confirmed that during a break in appellant's first trial "the word perjury was mentioned to [him] as a possibility or in the context of Mr. Hood's testimony."

The habeas judge denied the requested relief. No findings of fact or conclusions of law were requested. Appellant now appeals this ruling complaining that the habeas judge erred in denying the requested relief because the events mandating appellant's mistrial were a result of the State's deliberate or reckless conduct.

## II. DISCUSSION

### A. Standard of Review

As petitioner, appellant had the burden of proof at the habeas proceeding.

*See State v. Shastid*, 940 S.W.2d 405, 407 (Tex.App.—Fort Worth 1997, no pet.); *Ex parte Zavala*, 900 S.W.2d 867, 870 (Tex. App.—Corpus Christi 1995, no pet.). In reviewing the decision of the habeas judge, we review the findings in the light most favorable to the ruling and will uphold it absent an abuse of discretion. *See Zavala*, 900 S.W.2d at 870. We will affirm as long as the decision is correct on any theory of law applicable to the case. *See Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Pettigrew v. State*, 908 S.W.2d 563, 567 (Tex. App.—Fort Worth 1995, pet. ref'd).

### B. The *Bauder* Decision

In *Bauder*, the State's first two attempts to try Bauder for driving while intoxicated ended in mistrials. *Bauder v. State*, 921 S.W.2d 696, 697 (Tex.Crim.App.1996). The second mistrial was granted at the defendant's request when the prosecutor introduced evidence of extraneous misconduct in direct violation of a motion in limine. *Id.*

Bauder then sought habeas corpus relief contending that further prosecution was jeopardy barred under the state and federal constitutions. *Id.* Interpreting both double jeopardy clauses under federal constitutional law, the habeas court found that while the prosecutor had deliberately adduced the testimony of extraneous conduct, he had not done so to intentionally goad Bauder into requesting a mistrial. *Id.* Thus, it concluded, since Bauder himself had moved for mistrial, a successive prosecution was not jeopardy barred. *Id.*

The Fourth Court of Appeals affirmed, and the Court of Criminal Appeals granted discretionary review to determine whether the Texas Constitution afforded Bauder greater protection than the United States Constitution. *Id.* After careful consideration, the Court of Criminal Appeals concluded that the double jeopardy clause of the Texas Constitution provides greater protection than the parallel provision of the United States Constitution. *Id.* In so holding, the court reasoned that under the Texas double jeopardy clause:

[A] successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request.

*Id.* at 699. Because the grant of a mistrial "ought to be an exceedingly uncommon remedy," the court noted that where the trial court need not have granted a defendant's motion for mistrial, a subsequent trial is not jeopardy barred. *Id.* at 698.

■ Accordingly, on review of a claim that a second trial is jeopardy barred because the State either intended to induce the mistrial or "was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request," we must determine: (1) whether a mistrial was required upon the appellant's request; and (2) whether the events requiring a mistrial were a product of the prosecutor's deliberate or reckless conduct. *See Bauder v. State*, 936 S.W.2d 19, 20 (Tex.App.—San Antonio 1996, pet. granted)

### C. Application of *Bauder* to Instant Case

The Court of Criminal Appeals noted at the outset in *Bauder* that mistrials are "an extreme remedy for prejudicial events occurring during the trial process." *Bauder*, 921 S.W.2d at 698. The court instructed that mistrials are necessary only when "an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant." *Bauder*, 936 S.W.2d at 21. Most objectionable events do not require a mistrial "[b]ecause curative instructions are presumed efficacious to withdraw from jury consideration almost any evidence or argument which is objectionable, trial conditions must be extreme before a mistrial is warranted under Texas law." *Bauder*, 921 S.W.2d at 700. Because of this presumption, the court concluded by stressing that "conditions calling for the declaration of a mistrial before submission of a case

to the jury should be considered very unusual in any adversary system." *Id.* at 699–700.

■ We now turn to the question of whether the trial court "need not have granted the defendant's motion" for a mistrial. *Id.* at 699. In other words, "we must decide whether any reasonable view of the record supports not granting the mistrial." *Bauder,* 936 S.W.2d at 22.

■ As was stated in *Bauder,* "our system presumes that judicial admonishments to the jury are efficacious." *Bauder,* 921 S.W.2d at 698. This presumption is applicable to cases where a State's witness invokes the Fifth Amendment on cross-examination. *See Villegas v. State,* 791 S.W.2d 226, 234 (Tex.App.—Corpus Christi 1990, pet ref'd). The common remedy is to strike the witness's direct testimony and instruct the jury to disregard the testimony. *See Villegas,* 791 S.W.2d at 234; *Keller v. State,* 646 S.W.2d 506, 508 (Tex.App.—Houston [1st Dist.] 1982), *rev'd on other grounds,* 662 S.W.2d 362 (Tex.Crim.App.1984); *see also United States v. Morgan,* 757 F.2d 1074, 1077 (10th Cir.1985); *United States v. Cardillo,* 316 F.2d 606, 611 (2d Cir.1963), *cert. denied sub nom., Piselli v. United States,* 375 U.S. 857, 84 S.Ct. 123, 11 L.Ed.2d 84 (1963). Thus, a mistrial is necessary where a State's witness invokes his Fifth Amendment rights on cross-examination only when the direct testimony is so inflammatory or prejudicial that an instruction to disregard would not erase the testimony from the minds of the jurors.[1]

■ The extreme remedy of a mistrial was not necessary in the instant case. Appellant failed to seek the less drastic remedy of moving to strike Hood's direct testimony or request an instruction to disregard. While the concurring opinion relies on *Bruton* for the proposition that an instruction to disregard the testimony of a State's witness who refuses to submit to cross-examination is never sufficient to protect the right of the defendant, we believe that this determination depends on the facts of the case. To rely on such a rule in a vacuum distorts the reality of the present situation. In *Bruton,* a co-defendant's oral confession *implicating* Bruton was admitted into evidence without the benefit of cross-examination. *Bruton v. United States,* 391 U.S. 123, 124, 88 S.Ct. 1620, 1621, 20 L.Ed.2d 476, 485–86 (1968). In the instant case, Hood testified that he alone committed the crime. It is difficult to imagine what "right of confrontation" appellant was really concerned with.

■ Given the exculpatory nature of Hood's testimony on direct examination, an instruction to disregard Hood's testimony would have adequately protected appellant's rights.[2] We therefore hold that the record reasonably supports a finding that the nature of Hood's testimony did not create trial conditions that were so "extreme" that a mistrial was necessary. *See Bauder,* 921 S.W.2d at 698.

■ Appellant's brief only addresses the second prong of the analysis mandated by *Bauder.* That is, appellant has not addressed the preliminary issue of whether a mistrial was necessary under the facts of this

---

1. The concurring opinion misreads this portion of the majority opinion. The majority opinion does not limit a trial judge's discretion to grant a mistrial to the occurrence of an inflammatory event. Nor do we intend to suggest that the trial judge in this case abused his discretion in granting appellant's motion for a mistrial. Our review in this case is limited to appellant's point of error. While we agree that there is no evidence of deliberate or reckless misconduct, we must first determine whether a mistrial was necessary upon appellant's request. *See Bauder,* 921 S.W.2d at 699; *see also Bauder,* 936 S.W.2d at 22; *Janney v. State,* 938 S.W.2d 770, 773 (Tex. App.—Houston [14th Dist.] 1997, no pet.).

2. The *Bruton* Court's determination that an instruction to disregard the testimony was not suf-

ficient to protect the defendant's rights was similarly based on the character of the testimony admitted:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a codefendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury.

*Bruton,* 391 U.S. at 135–36, 88 S.Ct. at 1627–28, 20 L.Ed.2d at 484–85.

case and only argues that he is entitled to a reversal because the State was reckless in calling Hood as a witness.

Because we have determined that the mistrial granted at appellant's request was not mandated under the facts of the case and that an instruction to disregard would have been sufficient, we need not reach the second prong of the *Bauder* analysis—whether appellant's request for a mistrial was prompted by the State's deliberate or reckless misconduct. *See id.* at 699 (stating that prosecution is not to be held accountable for mistrial when court need not have granted defendant's motion). Two of our sister courts have already adopted this threshold approach to the analysis mandated by *Bauder*. *See Bauder*, 936 S.W.2d at 22; *Janney*, 938 S.W.2d at 773. We now join these courts and hold that the first prong of the analysis mandated by *Bauder* is a threshold determination.

Appellant's sole point of error is overruled.

### III. CONCLUSION

Because we find that a mistrial was not necessary upon appellant's request, his future prosecution for the capital murder of Sharon Oliver is not jeopardy barred and the order denying appellant's request for habeas relief is affirmed.

DAUPHINOT, J., filed a concurring opinion.

DAUPHINOT, Justice, concurring.

I write in concurrence because I respectfully disagree with the majority's *Bauder* analysis.

1. *See Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982); *Torres v. State*, 614 S.W.2d 436 (Tex.Crim.App. [Panel Op.] 1981).

2. *Kennedy*, 456 U.S. at 679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427.

3. *See Ex parte Loffland*, 670 S.W.2d 390 (Tex. App.—Fort Worth 1984, pet. ref'd) (Appellant contended that the conduct of the trial judge provoked the defense to request a mistrial. This court found that because there was no intent on the part of the trial judge to provoke the mistrial, no evidence of bad faith conduct by the trial

The general rule is that when a defendant in a criminal trial successfully moves for a mistrial, he may not thereafter invoke the bar of double jeopardy against a second trial.[1] The exception to that general rule is limited to "those cases in which the conduct giving rise to the successful motion for a mistrial was intended to provoke the defendant into moving for a mistrial."[2]

I believe that, as this court has done in the past, we should look first to determine whether the case now before this court is governed by the general rule or whether it falls within the narrow exception addressed by *Bauder*.[3] As I understand the opinion, the majority begins its analysis with the exception to the rule. The majority does not distinguish between the *Bauder* situation and the situation before this court. *Bauder* dealt with "an objectionable comment [that was] so emotionally inflammatory that curative instructions [were] not likely to prevent the jury being unfairly prejudiced against the defendant."[4] The majority, relying on *Bauder*, concludes that "a mistrial is necessary where a State's witness invokes his Fifth Amendment rights on cross-examination only when the direct testimony is so inflammatory or prejudicial that an instruction to disregard would not erase the testimony from the minds of the jurors."[5]

The majority is incorrect in declaring that an inflammatory event is the *sole* ground for granting a mistrial. In reversing the Eight Circuit Court of Appeals in *Bruton v. United States*, the United States Supreme Court held that an instruction to disregard is not "an adequate substitute for petitioner's constitutional right of cross-examination. The effect is the same as if there had been no

judge, no evidence of intentional misconduct or gross negligence on the part of the trial judge, and no judicial overreaching, the fact that the trial judge should not have granted the mistrial was irrelevant to the issue before this court. Because the *Loffland* case did not fall within the narrow exception to the general rule, we held that retrial was not barred).

4. *Bauder v. State*, 921 S.W.2d 696, 698 (Tex. Crim.App.1996).

5. Slip op. at 779.

instruction at all."[6] Thus failure to grant a mistrial when the defendant's confrontation right is denied is error, and in *Bruton*, it was reversible error.[7] But the error may be found to be harmless if properly admitted evidence of guilt is overwhelming.[8]

The case before us should be affirmed because

1. The prosecutor engaged in no intentional or reckless misconduct creating an inflammatory event;

2. The trial judge did not act improperly in granting Appellant's motion for mistrial when it became obvious that, despite the trial judge's efforts, Appellant would be denied his right to cross-examine the State's witness against him;[9] and

3. Appellant himself requested the mistrial and cannot now complain because it was granted.[10]

I would specifically hold that the cautious trial judge acted properly. For these reasons, I respectfully concur in the result.

**6.** See *Bruton v. United States*, 391 U.S. 123, 137, 88 S.Ct. 1620, 1628, 20 L.Ed.2d 476, 485–86 (1968).

**7.** See *id.*

**8.** See *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1059, 31 L.Ed.2d 340, 344 (1972).

**9.** See *Gori v. United States*, 367 U.S. 364, 365–70, 81 S.Ct. 1523, 1524–28, 6 L.Ed.2d 901, 903–05 (1961) (refusing to hold that retrial after a mistrial granted sua sponte was necessarily double jeopardy and stating that the U.S. Supreme Court would not force federal trial courts to refrain from "exercis[ing] their most sensitive judgment—according to their own lights in the immediate exigencies of trial—for the more effective protection of the criminal accused").

**10.** See *Kennedy*, 456 U.S. at 679, 102 S.Ct. at 2091, 72 L.Ed.2d at 427; *Torres*, 614 S.W.2d at 441.