IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. 0201-02






EX PARTE JAMES MICHAEL PETERSON, Appellee






ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIFTH COURT OF APPEALS


COLLIN COUNTY






 Hervey, J., filed a dissenting opinion in which Keller, P.J., and Keasler, J.,
joined.



DISSENTING OPINION 




 We granted discretionary review to reexamine our decision in Bauder v. State, 921 S.W.2d 696
(Tex.Cr.App. 1996) ("Bauder I"). The Court, however, ducks this question choosing, instead, to "clarify"
Bauder I. But, this is the fourth time in seven years that this Court has had to "clarify" state constitutional
double jeopardy issues first addressed in Bauder I and this attempt fares no better than the previous three. 
This should be considered a strong clue that Bauder I is not a sound decision. The Court should overrule
Bauder I and also hold that our state constitutional double jeopardy provision in Article I, Section 14, of
the Texas Constitution, affords no greater protection than its counterpart in the Fifth Amendment to the
United States Constitution and has no application to a mistrial setting or to when a criminal proceeding is
terminated before a verdict is reached.

 The record reflects that appellee offered to sell Undercover Detective Rose Spears some cocaine. 
This eventually led to the police stopping and searching appellee's car and finding cocaine in it. A single
indictment charged appellee with one count of possession of a controlled substance with intent to deliver
and another count of possession of a controlled substance.

 Pursuant to appellee's discovery request that the prosecution produce any statements appellee had
made "in connection with the charges," the prosecution produced an arrest summary. This arrest summary
stated that appellee came to the attention of the police after appellee told Spears that he had some cocaine
"in his possession."

 On the morning of trial but before the picked jury had been empaneled and sworn, the prosecution
received from Spears a videotape of the police stop of appellee's car and an audiotape of conversations
that Spears had had with appellee. These tapes were beneficial to the prosecution's case. Appellee's
lawyer declined the prosecution's offer to seek additional time from the trial court for appellee's lawyer to
review the tapes. The prosecution told appellee's lawyer that it would not use these tapes at trial since the
prosecution had not produced them during discovery.

 During trial, appellee did not object when the prosecution mentioned during opening statements that
Spears would testify that appellee offered to sell her some cocaine. But, when the prosecution later asked
Spears this question on direct examination, appellee's lawyer objected that the prosecution had not
"disclosed that conversation." The prosecution responded by pointing to that portion of the arrest summary
stating that appellee told Spears that he had some cocaine "in his possession." The trial court allowed the
prosecution to continue questioning "[a]s long as it [was] limited to that."

 When Spears testified on direct examination that appellee offered to sell her some cocaine, appellee
objected that this violated the discovery order and asked for a mistrial. The trial court noted that the arrest
summary contained statements "[r]egarding possession, not delivery." The trial court granted appellee's
request for a mistrial so that the prosecution would have "another opportunity to give discovery to
[appellee] so we can have a full disclosure to the defense about what [the prosecution intended] to
present."

 Later that day, appellee filed a habeas corpus application in the trial court. This habeas corpus
application asserted that retrial was jeopardy-barred under the Texas Constitution as interpreted by Bauder
I because the prosecution used "deliberate or reckless" methods that rendered "trial before the jury unfair
to such a degree that no judicial admonishment can (sic) cure it." (Emphasis in Original). Appellee's
habeas corpus application raised no federal constitutional double jeopardy claims. Appellee's sole witness
at the hearing on his habeas corpus application was the prosecutor who agreed that the tapes Spears
produced on the morning of trial were "severely damaging to appell[ee]" and that the mistrial benefitted the
prosecution by giving it the opportunity to get these tapes into evidence on retrial. (1) The prosecutor also
agreed that securing a conviction without appellee's statements to Spears "would have been pretty tough
to do." (2) On cross-examination, the prosecutor testified that she did not believe that she was doing anything
objectionable by questioning Spears about whether appellee offered to sell Spears some cocaine because
she believed that the arrest summary covered this.

 Appellee claimed during closing arguments at the habeas hearing that the double jeopardy provision
of the Texas Constitution as interpreted by Bauder I barred retrial because the prosecution intentionally
or recklessly caused the mistrial:

 As far as whether or not [the prosecutor] knew what was going on, and whether or not she
knew what was going on, and whether or not she knew what she was going to do was
going to cause a mistrial, she testifies that she knows that I object. She says that she
knows I take the discovery order seriously. The Court assumed that everybody
understands that everybody takes the discovery order seriously, and she admits in
retrospect that I hadn't been given anything that could be characterized as a statement by
the defendant or by my client offering to sell cocaine.


 Now, as far as whether or not she could assume that there was a risk, because the
intentional standard is what's set out by the federal standard, [Bauder I] adds recklessness
as a culpable mental state as to whether or not the State was reckless in causing the mistrial
to occur.


 Your Honor, certainly "reckless" has been met here. I believe that based on the-what
[Bauder I] says about what shows intentional conduct has been absolutely met, your
Honor. They get a tape. The tape is dispositive of the case. They can't get it in, and so
they try to get it in anyway, and I objected to this, your Honor. When she started talking
about statements made by [appellee], I started raising my objections.

 

 The trial court granted habeas corpus relief on the possession with intent to deliver count and
denied relief on the possession count. The trial court made no findings of fact or conclusions of law. 

 In the State's direct appeal, the Court of Appeals decided that the double jeopardy provision of
the Texas Constitution barred a retrial on the possession with intent to deliver count:

 The trial record, which was admitted into evidence at the State's request, shows the
prosecutor proceeded to inquire about Spears's conversation with appell[ee] concerning
the purchase of narcotics, despite specific court instructions not to stray from the arrest
summary. [Footnote Omitted] The trial record also shows the prosecutor knew the tapes
were "severely damaging" to appell[ee] and that admission of the tapes "would have
substantially increased [the State's] chances of securing a conviction." The State does not
contend, nor do we conclude, the state of law in this case is not well-settled. From this
record, the trial judge could have concluded appell[ee]'s motion was not a choice made
in response to ordinary reversible error to avoid conviction, appeal, reversal, and retrial,
but was precipitated by the prosecutor deliberately or recklessly crossing the line between
legitimate adversarial conduct and manifestly improper methods. [Citation Omitted]
Furthermore, the trial judge could have concluded the prosecutor's conduct rendered the
trial so unfair that no judicial admonishment could have cured it. [Citation Omitted] Under
these facts and circumstances, we cannot conclude the trial court erred in granting habeas
relief. We resolve the State's sole issue against it. (3)


 The Court exercised its discretionary authority to address grounds three and four of the State's
petition for discretionary review. Ground three asserts that we should "reexamine and abandon" Bauder
I because, among other things, the current test for determining whether a retrial in cases like this is
jeopardy-barred under the Texas Constitution is unclear. Ground four asserts that the Court of Appeals
did not properly analyze this case under current law. (4)

 In Bauder I, this Court held that, when a trial court has granted a mistrial at the defendant's request,
a retrial is jeopardy-barred under the Texas Constitution not only under conditions that bar retrial under
the federal constitution but also "when the prosecutor was aware but consciously disregarded the risk that
an objectionable event for which he was responsible would require a mistrial at the defendant's request." 
Bauder I, 921 S.W.2d at 699. In the next two sentences, Bauder I, 921 S.W.2d at 699, also stated:

 Under this rule, the prosecutor is not accountable for mistrials when the trial judge need not
have granted the defendant's motion [for a mistrial]. But he is accountable for mistrials
properly granted by the trial judge when the events making a mistrial necessary were of his
own deliberate or reckless doing. (5)


 Despite this clear language in Bauder I, our decision in Bauder II stated that the inquiry is "not the
correctness of the ruling granting the mistrial." Ex parte Bauder, 974 S.W.2d 729, 731-32 (Tex.Cr.App.
1998) ("Bauder II"). Bauder II, 974 S.W.2d at 732, stated that the two questions to be decided are:

 [t]herefore, the [two] questions presented in this case are, on the one hand, whether the
[defendant's] motion for mistrial was a choice he made in response to ordinary reversible
error in order to avoid conviction, appeal, reversal, and retrial. Or, on the other hand, was
he required to move for mistrial because the prosecutor deliberately or recklessly crossed
"the line between legitimate adversarial gamesmanship and manifestly improper methods"
(citation omitted) that rendered trial before the jury unfair to such a degree that no judicial
admonishment could have cured it? (6)


 Our decision in State v. Lee is the most recent decision on this subject. State v. Lee, 15 S.W.3d
921 (Tex.Cr.App. 2000). There this Court reaffirmed the holding in Bauder I that when a trial court has
granted a mistrial at the defendant's request, a retrial is jeopardy-barred under the Texas Constitution
"when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which
he was responsible would require a mistrial at the defendant's request." Lee, 15 S.W.3d at 923. Lee also
reaffirmed "that the critical questions to be addressed in this context" are the two questions set out above
from Bauder II. Lee, 15 S.W.3d at 923. Upon resolving these two questions in favor of the State, Lee
concluded that it could find no "reckless disregard that a mistrial would be reasonably certain to occur." 
Lee, 15 S.W.3d at 924-26.

 Since the Court has decided that Bauder I needs some more clarifying, then it must agree that this
Court's decisions in Bauder I, Bauder II and Lee are not models of clarity. And, they are not models of
clarity. For example, that portion of Bauder II saying that the inquiry is "not the correctness of the ruling
granting the mistrial" contradicts that portion of Bauder I saying that "the prosecutor is not accountable
for mistrials when the trial judge need not have granted the defendant's motion [for a mistrial]." Compare
Bauder II, 974 S.W.2d at 731-32, with, Bauder I, 921 S.W.2d at 699.

 Bauder II could also be read as contradicting itself where it says that the inquiry is "not the
correctness of the ruling granting the mistrial" and then later it says that courts must determine whether the
prosecution recklessly did something "that rendered trial before the jury unfair to such a degree that no
judicial admonishment could have cured it." Bauder II, 974 S.W.2d at 731-32. In many cases, however,
whether a judicial admonishment could have cured whatever the prosecution did to cause a mistrial has
some bearing on and is somewhat dispositive of an inquiry into the "correctness of the ruling granting the
mistrial."

 Our decisions in Bauder II and Lee could also be read to mean that the two questions set out in
Bauder II are necessarily dispositive of the Bauder I determination of whether the prosecutor was "aware
but consciously disregarded the risk that an objectionable event for which he was responsible would require
a mistrial at the defendant's request." The Court of Appeals apparently read Bauder II and Lee this way
since these are the only two questions that the Court of Appeals addressed. Peterson, slip op. at 7-8. 
It did not address nor decide whether the prosecutor was "aware but consciously disregarded the risk that
an objectionable event for which he was responsible would require a mistrial at the defendant's request"
as required by Bauder I.

 Instead of pursuing a quixotic attempt to clarify this jurisprudence, the Court should reexamine it. 
This would require the Court to construe our state constitutional double jeopardy provision contained in
Article I, Section 14, of the Texas Constitution. When we construe a constitutional provision, our duty is
to give effect to the intent of the voters who adopted it. See Lanford v. Fourteenth Court of Appeals,
847 S.W.2d 581, 585 (Tex.Cr.App. 1993); see also Cobb v State, 85 S.W.3d 258, 268 (Tex.Cr.App.
2002), cert. denied, 123 S.Ct. 1252 (2003) (the judiciary would exceed its constitutional authority to
create new state constitutional doctrines without solid jurisprudential foundation). Our personal beliefs on
whether these voters adopted a wise policy are not relevant to this determination. See id.

 Our state constitutional double jeopardy provision obviously was patterned after its federal
constitutional counterpart. See Bauder I, 921 S.W.2d at 698. Therefore, in construing our state
constitutional double jeopardy provision, the history of the federal constitutional double jeopardy provision
and United States Supreme Court decisions construing it are persuasive. The policies advanced by
constitutional double jeopardy principles are usually stated as protecting a citizen against a second
prosecution for the same offense after acquittal or conviction and against multiple criminal punishments for
the same offense. See United States v. Dixon, 113 S.Ct. 2849 (1993); North Carolina v. Pearce, 89
S.Ct. 2072, 2076 (1969). These protections obviously are not implicated when a criminal proceeding is
terminated before a verdict is reached.

 In Oregon v. Kennedy, however, the United States Supreme Court decided that when government
conduct at trial is "intended to goad [a] defendant into moving for a mistrial ... a defendant [may] raise the
bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." 
Oregon v. Kennedy, 102 S.Ct. 2083, 2089 (1982) (internal quotations omitted). The Court further stated
that government conduct "that might be viewed as harassment or overreaching" does not bar a retrial under
double jeopardy principles "absent [prosecutorial] intent to subvert [double jeopardy] protections." Id. (7) 
The double jeopardy interest that Kennedy claimed to promote was "the defendant's valued right to
complete his trial before the first jury." Kennedy, 102 S.Ct. at 2088.

 As a matter of state constitutional law, Bauder I claimed to bar "retrial under slightly more
expansive conditions than those allowed by the United States Supreme Court" in Kennedy. Bauder I, 921
S.W.2d at 699. According to Bauder I, this includes not only government conduct "intended to induce
a motion for mistrial" but also "when the prosecutor was aware but consciously disregarded the risk that
an objectionable event for which he was responsible would require a mistrial at the defendant's request." 
Id. (no "distinction of constitutional significance between conduct of a prosecuting attorney in which he
intends to cause a mistrial and conduct of a prosecuting attorney which he is aware is reasonably certain
to result in a mistrial"). Like Kennedy, the double jeopardy interest that Bauder I claimed to promote was
the defendant's valued right "to be tried in a single proceeding by the jury first selected." Bauder I, 921
S.W.2d at 699.

 Bauder I also promoted the rationale that its "less subjective rule" had "practical advantages"
because this rule did not depend "upon proof of the prosecutor's specific purpose [of intentionally goading
the defendant into moving for a mistrial]." Id. Bauder I also explained that "the conditions under which
retrial is barred will generally be clearer when the prosecutor's subjective intent is not an issue, permitting
a more certain application of the rule in most cases." Id.

 Even if all this were true (which for reasons later stated, it is not), it still must be remembered that
Texas' double jeopardy provision was patterned after its federal counterpart and that the history of the
federal double jeopardy provision is persuasive evidence of the intent of the voters who adopted our state
constitutional double jeopardy provision. And, the history of the federal double jeopardy provision
indicates that discharge of the jury before a verdict is reached and a defendant's "valued right to be tried
by the first selected jury" were never intended to implicate double jeopardy principles. See Crist v. Bretz,
98 S.Ct. 2156, 2163-68 (1978) (Powell, J., dissenting) (thorough historical discussion of double jeopardy
implications of premature discharge of the jury) and, e.g., at 2167 (concluding that courts "simply enlisted
the [common-law] doctrine concerning needless discharge of juries in the service of double jeopardy
principles, largely without analysis and apparently with little awareness of history").

 This State's historical record supports Justice Powell's view in Crist and the North Carolina v.
Pearce view that double jeopardy principles were meant only to protect against a second prosecution for
the same offense after acquittal or conviction and that discharging a jury before a verdict is reached does
not implicate these principles. Our constitution does not (and never did in its earlier 1845, 1861, and 1866
versions) specifically address the consequences of a mistrial. See Lee, 15 S.W.3d at 928 (Keasler, J.,
concurring).

 Legislative action at the time of these early constitutions also supports the view that mistrials had
no double jeopardy implications. For example, the 1856 Code of Criminal Procedure provided:

 Art. 18. No person for the offense can be put in jeopardy of life or limb. This is
intended to mean that no person can be subjected to a second prosecution for the
same offense, after having been once prosecuted in a Court of competent
jurisdiction and duly convicted.


 Art. 19. The foregoing article will exempt no person from a second trial, who has been
convicted on an illegal instrument or information, and the judgment thereupon arrested, nor
where a new trial has been granted to the defendant, nor where a jury has been
discharged without rendering a verdict, nor for any case other than that of a legal
conviction.


 Art. 20. By provisions of the Constitution, an acquittal of the defendant exempts him from
a second trial, or a second prosecution for the same offense, however, irregular the
proceedings may have been; but if the defendant shall have been acquitted upon trial, in a
Court having no jurisdiction of the offense, he may, nevertheless, be prosecuted again in
a Court having jurisdiction.


See also State v. Lee, 15 S.W.3d at 927-31, 928 (Keasler, J., concurring).


 Also, during the approximately 150 years before our decision in Bauder I, our state constitutional
double jeopardy provision had never been interpreted as having any application to the mistrial setting or
to when a prosecutor recklessly or even intentionally caused a mistrial. See Lee, 15 S.W.3d at 927-28
(Keasler, J., concurring). It also is noteworthy that Bauder I did not even purport to rest its decision on
the intent of the voters who adopted our state constitutional double jeopardy provision or on any other
aspect of "Texas history, jurisprudence, or law." See Cobb, 85 S.W.3d at 268 (state constitutional
interpretation should be based on "aspects of Texas history, jurisprudence, or law"). Instead, Bauder I
used a standardless mode of state constitutional interpretation to make up a state constitutional right which
for over 150 years had not existed. But see Cobb, 85 S.W.3d at 268; Bauder I, 921 S.W.2d at 703-09
(McCormick, P.J., dissenting).

 In addition, Bauder I is simply wrong to claim that it bars "retrial under slightly more expansive
conditions than those allowed by the United States Supreme Court" in Kennedy. See Bauder I, 921
S.W.2d at 699. Bauder I is also wrong to claim that there is no "distinction of constitutional significance
between conduct of a prosecuting attorney in which he intends to cause a mistrial and conduct of a
prosecuting attorney which he is aware is reasonably certain to result in a mistrial." See id. (8)

 Bauder I's "culpable mental state" is completely different than that discussed in Kennedy. 
Kennedy's culpable mental state involves the prosecutor's intent to subvert double jeopardy protections. 
Kennedy, 102 S.Ct. at 2089 (barring retrial when prosecution "goads" defendant to move for mistrial with
intent "to subvert [double jeopardy] protections"). Bauder I's culpable mental state, however, involves
only whether a prosecutor intentionally or recklessly caused a mistrial and not whether a prosecutor
intentionally or even recklessly subverts double jeopardy protections. These are two completely different
tests. It is conceivable that a prosecutor could recklessly or even intentionally cause a mistrial without
having any intent to subvert double jeopardy protections. Bauder I, therefore, can bar retrial under greatly
expanded conditions than those allowed by the Supreme Court in Kennedy. (9)

 Bauder I is also wrong to claim that its rule "will generally be clearer when the prosecutor's
subjective intent is not an issue, permitting a more certain application of the rule in most cases." See
Bauder I, 921 S.W.2d at 699. But Bauder I's main holding--that a retrial is barred "when the prosecutor
was aware but consciously disregarded the risk that an objectionable event for which he was responsible
would require a mistrial at the defendant's request"-literally makes the prosecutor's subjective intent an
issue. This standard is essentially a recklessness standard which our law defines as a subjective mental
state. See Section 6.03(c).

 And, Bauder I's own history undermines its claim that it permits "a more certain application of [its]
rule in most cases." Bauder I generated five judicial opinions over a period of five years before the case
was finally disposed of adversely to the defendant. (10) That this is the fourth time in seven years that this
Court has had to clarify Bauder I further undermines Bauder I's claim that it permits "a more certain
application of [its] rule in most cases."

 And, it is highly significant that the Court's opinion in this case retreats from these rationales and
candidly admits that Bauder I "has not always proven easy to apply" and that the "prosecutor's mens rea
is pivotal." See Peterson, slip op. at 15 (proof of Bauder I's "reckless act, is no less subjective a standard
than proof of [Kennedy's] intentional act"), and at 16 (acknowledging that the "Bauder I standard has not
always proven easy to apply"). The unclarified holding in Bauder I has, therefore, been transformed into
a made-up constitutional rule in search of a rationale to justify its existence.

 As another aid to understand why Bauder I should be overruled, it is only necessary to summarize 
this Court's current case law and how it has been and will be applied. Bauder I, 921 S.W.2d at 699, held:

 [w]e therefore hold that a successive prosecution is jeopardy barred after declaration of
a mistrial at the defendant's request, not only when the objectionable conduct of the
prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was
aware but consciously disregarded the risk that an objectionable event for which he was
responsible would require a mistrial at the defendant's request. Under this rule, the
prosecutor is not accountable for mistrials when the trial judge need not have granted the
defendant's motion. But he is accountable for mistrials properly granted by the trial judge
when the events making a mistrial necessary were of his own deliberate or reckless doing.


 But, just two years later, Bauder II, 974 S.W.2d at 731, 733, decided that the "question is not the
correctness of the ruling granting the mistrial;" rather, the questions presented:

 . . . are, on the one hand, whether the [defendant's] motion for mistrial was a choice he
made in response to ordinary reversible error in order to avoid conviction, appeal,
reversal, and retrial. Or, on the other hand, was he required to move for mistrial because
the prosecutor deliberately or recklessly crossed "the line between legitimate adversarial
gamesmanship and manifestly improper methods (citation omitted) that rendered trial
before the jury unfair to such a degree that no judicial admonishment could have cured it?


 Then, our decision in Lee, 15 S.W.3d at 925-26, resolved the state constitutional double jeopardy
question with a discussion about the defendant's "prearrest, pre-Miranda silence" which is far afield from
anything that double jeopardy principles are meant to protect. Lee, 15 S.W.3d at 925-26, decided that:

 Because the prosecutor's statement [that resulted in a mistrial at the defendant's request]
concerning [the defendant's] prearrest, pre-Miranda silence was not clearly erroneous,
it cannot be said that there was any intent to induce a mistrial or reckless disregard that a
mistrial would be reasonably certain to occur.


 Today, the Court, as it has at least three times before, reaffirms the unclarified holding of Bauder
I that when a defendant has successfully moved for a mistrial, a retrial is jeopardy-barred under the Texas
Constitution not only under the Kennedy standard but also "when the prosecutor was aware but
consciously disregarded the risk that an objectionable event for which he was responsible would require
a mistrial at the defendant's request." See Peterson, slip op. at 14. The Court explains that this standard
is satisfied when a prosecutor "either deliberately or recklessly" uses "manifestly improper prosecutorial
methods." See Ex parte Peterson, slip op. at 16.

 The Court further explains that Bauder I requires a three-part analysis in analyzing a double
jeopardy mistrial claim under Kennedy and Bauder I and all the other subsequent opinions that were
supposed to have clarified Bauder I. 

 1) Did manifestly improper prosecutorial misconduct provoke the mistrial? [Footnote
Omitted].


 2) Was the mistrial required because the prejudice produced from that misconduct could
not be cured by an instruction to disregard?[ (11)] [Footnote Omitted] And


 3) Did the prosecutor engage in that conduct with ... conscious disregard for a substantial
risk that the trial court would be required to declare a mistrial (Bauder standard)?

 

See Peterson, slip op. at 19-20. (12)

 The Court's opinion also sets out various nonexhaustive factors "that trial and appellate courts might
consider in assessing the prosecutor's mens rea" apparently under part three of its analysis although the
Court's opinion states that they are "suggested criteria by which to gauge [all] three prongs." See
Peterson, slip op. at 26.

 1) Was the misconduct a reaction to abort a trial that was "going badly for the State"? In
other words, at the time that the prosecutor acted, did it reasonably appear that the
defendant would likely obtain an acquittal? [Footnote Omitted].


 2) Was the misconduct repeated despite admonitions from the trial court?


 3) Did the prosecutor provide a reasonable, "good faith" explanation for the conduct?


 4) Was the conduct "clearly erroneous"? [Footnote Omitted].


 5) Was there a legally or factually plausible basis for the conduct, despite its ultimate
impropriety? [Footnote Omitted]


 6) Were the prosecutor's actions leading up to the mistrial consistent with inadvertence,
lack of judgment, or negligence, or were they consistent with intentional or reckless
misconduct? [Footnote Omitted].


See Peterson, slip op. at 22-23.


 It can hardly be disputed that none of this does much to clarify Bauder I. Bauder I will continue
to be difficult to apply and will do little to promote (if not actually frustrate) the interests protected by
double jeopardy principles. See, e.g., Bauder, 2 S.W.3d at 378 n.1 (noting probable contradictions
between this Court's decisions in Bauder I and Bauder II). Bauder I, therefore, contains the seeds for
its own demise where it stated:

 As we see it, there is no wisdom in a double jeopardy standard of decision which is at
once difficult to apply and does little to promote interests protected by the Double
Jeopardy Clause.


See Bauder I, 921 S.W.2d at 699.


 Finally, the Court's opinion states that, in reviewing a trial court's ruling such as the one here with
no explicit fact findings, appellate courts cannot defer to a trial court's "implicit factual findings" if appellate
courts "are unable to determine with any certainty what the trial court's implied factual findings are from
the record." See Peterson, slip op. at 24-25. The applicable standard of review in cases like this,
however, requires the appellate court to imply the necessary fact findings to support the trial court's legal
ruling and then determine whether the record supports these implied fact findings. See Carmouche v.
State, 10 S.W.3d 323, 328 (Tex.Cr.App. 2000) (appellate standard of review requires appellate court
to assume "that the trial court made implicit findings of fact supported in the record that buttress its [legal]
conclusion"); Guzman, 955 S.W.2d at 89; see also State v. Ross, 32 S.W.3d 853, 855-58 (Tex.Cr.App.
2000) (appellate court deferred to trial court's "implicit [credibility] finding" even though appellate court
was "unable to determine with any certainty what the trial court's implied factual findings [were] from the
record"). This standard does not require the appellate court to perform the impossible task of determining
"with any certainty what the trial court's implied factual findings are from the record." Instead, it requires
the appellate court to defer to "implicit factual findings" that the record supports.

 In this case, for example, the Court of Appeals arguably could affirm the trial court's ruling on the
basis that the question of whether the prosecutor "was aware but consciously disregarded the risk that an
objectionable event for which [s]he was responsible would require a mistrial at the defendant's request"
is one of those application of law to fact questions whose resolution turns solely on an evaluation of
credibility and demeanor. See Ross, 32 S.W.3d at 857; Guzman, 955 S.W.2d at 89. And, resolving the
issue this way would squarely present ground three for this Court to decide. I respectfully dissent.

 Hervey, J.


Filed: October 8, 2003

Publish

1. Ex parte James Michael Peterson, slip op. at 3-4 (Tex.App.-Dallas, No. 05-01-01093-CR,
Delivered December 20, 2001) (unpublished).
2. Peterson, slip op. at 3-4.
3. Peterson, slip op. at 7-8.
4. The Court decides that it need not address ground three because "the courts below were mistaken
in their application of [Bauder I] to this situation." See Ex parte Peterson, S.W.3d slip op. at 2
(Tex.Cr.App. No. 0201-02, delivered this date). The Court, therefore, remands the case to the Court of
Appeals for further proceedings under its "clarification" of Bauder I (this, of course, is exactly what
happened in Bauder which generated five judicial opinions over five years before the case was finally
disposed of).

 The Court's opinion, however, does not dispose of ground three which should be dismissed without
prejudice (or conditionally held) in the event that the Court of Appeals correctly decides that a subsequent
prosecution is jeopardy-barred under Bauder I. Under these circumstances, ground three would squarely
be presented for this Court to decide. 
5. On remand from Bauder I, the Court of Appeals decided that "the trial court need not have granted
Appellant's motion for mistrial; therefore, his subsequent trial was not jeopardy-barred." Bauder v. State,
936 S.W.2d 19, 20 (Tex.App.-San Antonio 1996). At this time, the Court of Appeals understood
Bauder I as calling for a two-step analysis:


 First, [the appellate court] must determine whether the trial judge "need not have granted
the defendant's motion" for mistrial. This first step in the analysis is necessary because the
prosecutor can only be accountable for a mistrial if the mistrial was properly granted. 
Second, we must determine whether the prosecutor either intended to induce the mistrial
or "was aware but consciously disregarded the risk that an objectionable event for which
he was responsible would require a mistrial at the defendant's request."


Bauder, 936 S.W.2d at 20.
6. On remand from Bauder II, the Court of Appeals rejected the defendant's double jeopardy claim
for the third time. Ex parte Bauder, 2 S.W.3d 376, 378 (Tex.App.-San Antonio, 1999, pet. ref'd). The
Court of Appeals again decided that the mistrial was erroneously granted because a judicial admonishment
could have cured any prejudice; but, it presumed from this Court's reversal in Bauder II of the Court of
Appeals' second opinion "that neither the necessity of the mistrial nor the efficacy of a judicial
admonishment is dispositive." Bauder, 2 S.W.3d at 378 n. 1. 
7. Kennedy is usually characterized as holding that double jeopardy principles bar a retrial when the
government "intentionally goads" a defendant into successfully moving for a mistrial. In Kennedy, the
Supreme Court apparently was applying the "former acquittal" double jeopardy protection because in other
parts of its opinion it refers to a "prosecutor's actions giving rise to [a defendant's] motion for mistrial ...
in order to goad the [defendant] into requesting a mistrial" when the record shows that "the jury was
likely to acquit the accused." Kennedy, 102 S.Ct. at 2088 n. 4, 2091 (internal quotations omitted)
(emphasis supplied). So Kennedy might only be aimed at a prosecutor goading a defendant into moving
for a mistrial when the defendant's mistrial motion is necessitated by "prosecutorial impropriety
designed to avoid an acquittal." See id. (emphasis supplied).
8. State statutory law recognizes a significant distinction between intentional and reckless mental
states. Compare Section 6.03(a) (definition of intentional culpable mental state), with, Section 6.03(c)
(definition of reckless culpable mental state).
9. Viewed in the light most favorable to the trial court's ruling, the evidence and reasonable inferences
therefrom arguably would support findings that the prosecutor was "goading" appellee into moving for a
mistrial with the "intent to subvert [appellee's] double jeopardy protections" by avoiding an acquittal on
the possession with intent to deliver count since the prosecution apparently had little or no evidence that
was produced in response to the discovery order that would have supported a guilty verdict on that count. 
See Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997) (appellate courts should defer to trial
court's implied fact findings that the record supports). Even though the evidence might support these
findings for purposes of establishing a federal constitutional double jeopardy claim under Kennedy, this
evidence arguably does not support a finding that the prosecutor was "aware but consciously disregarded
the risk" that her questions to Spears concerning whether appellee offered to sell her cocaine "would
require a mistrial at the [appellee's] request"for purposes of establishing a state constitutional double
jeopardy claim under Bauder I. The prosecutor could have believed that the trial court, instead of granting
a mistrial, would delay the trial to supplement discovery to provide appellee with an opportunity to defend
against the "new" evidence that appellee offered to sell Spears some cocaine. See Smith v. State, 779
S.W.2d 417, 431 (Tex.Cr.App. 1989). The law, at least, appears not to be settled as to what a trial court
can do under these circumstances which, pursuant to our decision in Lee, would be fatal to appellee's state
constitutional double jeopardy claim under Bauder I. See Lee, 15 S.W.3d at 925-26; Smith, 779 S.W.2d
at 431. Bauder I, therefore, can also restrict the conditions under which a retrial would be barred under
Kennedy. In the final analysis then, Bauder I can bar retrial when double jeopardy interests would permit
it and it can permit retrial when double jeopardy interests would bar it.
10. See Bauder v. State, 880 S.W.2d 502 (Tex.App-San Antonio 1994); Bauder v. State, 921
S.W.2d 696 (Tex.Cr.App. 1996); Bauder v. State, 936 S.W.2d 19 (Tex App.--San Antonio 1996); Ex
parte Bauder, 974 S.W.2d 729 (Tx.Cr.App. 1998); Ex parte Bauder, 2 S.W.3d 376 (Tex.App.-San
Antonio 1999). 
11. This essentially is what this Court rejected in Bauder II, 974 S.W.2d at 731-32.
12. It is unclear whether all three of these factors must be met to satisfy Bauder I and its clarifying
progeny. Perhaps the Court can clarify this in a later opinion.