

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-11-00536-CR

Ex parte Edgar Montes Fuertes    §    From the 235th District Court

§    of Cooke County (97-194)

§    January 31, 2013

§    Per Curiam

§    (nfp)

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgment. It is ordered that the judgment of the trial court is affirmed.

SECOND DISTRICT COURT OF APPEALS


PER CURIAM



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00536-CR

EX PARTE EDGAR
MONTES FUERTES

------------

FROM THE 235TH DISTRICT COURT OF COOKE COUNTY

------------

# MEMORANDUM OPINION[1]

------------

## I. Introduction

In a single issue, Appellant Edgar Montes Fuertes appeals the denial of his application for writ of habeas corpus. We affirm.

## II. Background

---
[1]*See* Tex. R. App. P. 47.4.

In 2011, Fuertes filed an application for writ of habeas corpus under code of criminal procedure article 11.072, alleging that his sexual assault conviction was void because his guilty plea was rendered involuntary due, among other things, to ineffective assistance of counsel. At the hearing on Fuertes's application, the trial court admitted into evidence Fuertes's sexual assault case documents, including the pre-sentence investigation report (PSI), the reporter's record from Fuertes's 1998 plea hearing, and the recording of Fuertes's 1997 confession and the transcript of that recording. The trial court also heard testimony from David Wacker, the lawyer who had been appointed to represent Fuertes in the sexual assault case, Fuertes, and Fuertes's wife and father.

The trial court denied Fuertes's application for habeas corpus relief and entered the following findings of fact pertinent to Fuertes's sole issue in this appeal:

> 3. [Fuertes's] attorney, David Wacker, had no independent recollection of the plea or the case that had been resolved nearly thirteen (13) years ago. At the current date, he could not locate any personal records of the case, which was court appointed. . . .
>
> . . . .
>
> 12. The Court Reporter's Record of the applicant's plea of guilty makes it clear that the defendant understood the plea bargain at the time of his plea . . . .
>
> . . . .
>
> 15. The Probation Officer, who did the Pre-sentence Investigation for the Court testified that [Fuertes] stated to her that he had applied for residency in the United States, but had not yet

3

been granted and was not a resident alien at the time of the court proceedings . . . .

16. [Fuertes] testified that . . . he first entered the United States illegally and when he reentered after deportation he again entered illegally . . . . Mr. Fuertes had made admissions against his penal interests prior to his guilty plea about his guilt of the sexual assault of a child charge . . . and the fact that he was an undocumented alien . . . . The Court specifically finds all these statements to be true.

17. [Fuertes's] wife . . . testified that [Fuertes] was deported sometime after he was placed on probation in this case and after some time he again illegally reentered the United States . . . .

18. The Court finds that the record is silent as to the exact timing or as to the reason for the deportation.

19. The Court also finds that the record does not prove what, if any, legal status the defendant had in the United States at the time of his plea other than illegal. Thus the Court finds that [Fuertes] was an undocumented alien at the time of his plea.

20. Based on Mr. Wacker's testimony, the Court finds that he told [Fuertes] only what was required by law at the time of this plea.

    . . . .

22. The State introduced a tape recording of [Fuertes's] recorded statement that was made on September 11, 1997 concerning his involvement in the offense charged . . . the transcript of which was introduced as State's Exhibit #3. This statement included a full confession to the offense of sexual assault of a child given to the investigating officer prior to his arrest . . . .

The trial court concluded that Fuertes had established that Wacker failed to properly advise him that removal from the United States was virtually certain and presumptively mandatory, making counsel's performance deficient. However, the trial court also concluded that Fuertes could not demonstrate

4

prejudice because he was an undocumented alien. Further, the trial court concluded:

> The Court finds that [Fuertes] gave a full voluntary confession to this offense to law enforcement, the prosecution's case was strong, the defendant benefited from his plea in that he was released from custody and not arrested until latter [sic]. The fact that [Fuertes] knew he had entered the country illegally and was undocumented shows that he already had notice he was subject to deportation. The Court finds that the showing of actual prejudice could not be made in this instance.

This appeal followed.

### III. Ineffective Assistance of Counsel

In his sole issue, Fuertes argues that the trial court applied the wrong standard when assessing prejudice and erred by holding that he failed to show prejudice. Specifically, Fuertes complains that to support its conclusion on prejudice, the trial court improperly relied upon its assessment that he would not have received a more favorable disposition of his case had he gone to trial.

### A. Standard of Review

We review the trial court's denial of an application for writ of habeas corpus for an abuse of discretion. *Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App.), *cert. denied*, 549 U.S. 1052 (2006). Under this standard, we afford almost total deference to the trial court's findings of fact, particularly when those findings are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We apply the same deference to the trial court's application of law to questions of fact if resolution of those issues

5

requires an evaluation of credibility and demeanor. *Ex parte Legrand*, 291 S.W.3d 31, 35–36 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). If resolution of the ultimate issue turns solely on a question of law, our review is de novo. *Id.* The habeas applicant bears the burden of establishing by a preponderance of the evidence that the facts entitle him to relief. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). We will uphold the habeas court's judgment as long as it is correct on any theory of law applicable to the case. *Ex parte Taylor*, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001); *Ex parte Primrose*, 950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd).

## B. Analysis

Because the trial court found counsel's performance deficient, we must evaluate whether that performance prejudiced Fuertes when he entered his guilty plea, considering on the facts of this case whether Fuertes showed that there was a reasonable probability that, but for counsel's error, he would not have pleaded guilty but instead would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985); *Johnson v. State*, 169 S.W.3d 223, 231 (Tex. Crim. App. 2005), *cert. denied*, 546 U.S. 1181 (2006); *Ex parte Moreno*, 382 S.W.3d 523, 530 (Tex. App.—Fort Worth 2012, pet. ref'd). Our focus is whether Fuertes was deprived of his right to a trial, not whether the trial's outcome would have been favorable to him. *See Johnson*, 169 S.W.3d at 231. That is, before relief may be granted, Fuertes had to convince the trial court that a decision to reject the plea bargain would have been rational under the

6

circumstances.  *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010); *see also Hill*, 474 U.S. at 59, 106 S. Ct. at 370.[2]  In determining whether a defendant would not have pleaded guilty but for counsel's deficient advice, a court is to consider the circumstances surrounding the plea and the gravity of the alleged failure material to that determination.  *Ex parte Moody*, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

### 1.  Fuertes's Habeas Petition and Hearing

In Fuertes's habeas petition, he argued that his guilty plea was void because (1) the events on which the prosecution was based did not occur in the county in which he was prosecuted, leaving the trial court without jurisdiction over his case; (2) his plea was involuntary because of Wacker's ineffective assistance in advising him to plead guilty in exchange for a one year probationary period, in telling him that pleading guilty would not affect his immigration status, and in failing to request a translator; and (3) Fuertes's plea could not have been voluntary because he did not have a translator and so could not understand the proceedings.  Because Fuertes's sole complaint in this appeal pertains to ineffective assistance of counsel with regard to his immigration status, we will only address the portion of the record that pertains to this issue.

The record reflects that Fuertes entered the United States illegally in 1989 and was in the country illegally in 1997 when he confessed to the police that he

---

[2]Whether *Padilla* applies retroactively to Fuertes's plea is an open question that we need not reach here.  *See Moreno*, 382 S.W.3d at 527 n.7.

had committed the sexual assault. Fuertes testified that he had confessed because he was afraid of going to jail.

The transcript of the recording of Fuertes's 1997 confession at the Cooke County Sheriff's Department reflects that Fuertes received, understood, and waived his *Miranda* warnings. During his confession, Fuertes said that he was twenty-four years old, acknowledged that he knew the pregnant complainant M.W., and said that he could not be the father of M.W.'s child because he had used a condom. Fuertes stated that M.W. told him that she was sixteen, that he told M.W. that he was twenty-two, that he did not know that it was illegal to have sexual intercourse with someone younger than age seventeen, that he had only had sexual intercourse with M.W. once, and that he was unmarried but lived with his girlfriend.[3] Fuertes was arrested for the offense on October 24, 1997, and charged with committing the second degree felony of sexual assault of M.W., who was under seventeen and not his spouse.

Fuertes pleaded guilty in 1998 to the offense in exchange for a ten-year suspended sentence and ten years of community supervision; the trial court entered judgment reflecting this agreement. Fuertes was deported to Mexico two months later and reentered the United States illegally in 2000, and in 2003, the

---

[3]The PSI reflects that Fuertes and his "girlfriend" Lagordia had a six-year-old child at the time. At the hearing on the habeas petition, Lagordia testified that she and Fuertes had been married for sixteen years, since approximately 1995. Fuertes's father also testified that Fuertes was married in 1997 and that Fuertes's child with Lagordia was between four and six years old at the time.

8

State filed a motion to revoke Fuertes's community supervision. Fuertes spent a month and a half in jail before returning to community supervision, and he discharged his community supervision in 2008.

At the habeas hearing in April 2011, Wacker, Fuertes's former appointed counsel, testified that he did not recognize Fuertes, had no independent recollection of Fuertes's case from over a decade before, and remembered no conversations with Fuertes, although he agreed that as a matter of habit, he would have gone through the complete set of plea papers with Fuertes, including the statutory warnings concerning immigration status, deportation, and reentry into the United States; the plea bargain agreement; and the consequences of the plea.

Fuertes testified that Wacker never told him anything about the possible consequences of his plea with regard to his immigration status. However, the plea hearing record shows that the trial judge explained to Fuertes that if he was found guilty, the punishment range for the offense was not less than two years' or more than twenty years' confinement and a fine not to exceed $10,000 and that Fuertes said that he was pleading guilty because he was guilty. Fuertes said, "Yes, sir," when the trial judge asked him whether he understood that the plea bargain was for a ten-year sentence, suspended, and ten years of community supervision. Fuertes told the trial judge that he was not a United States citizen and said, "yes," when the trial judge asked, "You understand, do you not, that a conviction for an offense like this could result in your being deported, or denied

9

admission into the United States?"  At the plea hearing, Fuertes agreed that his attorney had explained that to him.

During the habeas hearing, Fuertes testified that his wife was not a United States citizen or legal resident but said that she was "waiting for permission."  He did not testify with regard to his children's citizenship—by the time of the hearing on the habeas petition, Fuertes had two children—or his father's citizenship or residency status, although Fuertes did state that his father had applied for a work permit for Fuertes in 1989, and that it had been temporarily approved in 1998.

### 2. 8 U.S.C. § 1229b(b)

On appeal, Fuertes argues that but for Wacker's failure to inform him that his guilty plea would render him ineligible for legal permanent residency, he would not have pleaded guilty but instead would have insisted on going to trial, and he complains that the trial court never addressed this question.  Fuertes acknowledges that the plea itself is not what made him inadmissible or deportable; rather, he argues that his plea affected his ability to seek a subsequent cancellation of removal under 8 U.S.C. § 1229b(b)(1) because it called into question whether he had been "a person of good moral character" during that time and that he would have been entitled to apply for relief under 8 U.S.C. § 1229b but for his plea.[4]  *See* 8 U.S.C.A. § 1229b (West 2005 & Supp. 2012).

---

[4]Fuertes states that the applicable statutory provision is 8 U.S.C. § 1226b(b); however, there is no such provision.  8 U.S.C. § 1229b is entitled

We note first that Fuertes never expressly placed this particular issue before the trial court.  *See* Tex. R. App. P. 33.1.  That is, in his habeas application, Fuertes neither made any mention of 8 U.S.C. § 1229b nor specifically alleged that had counsel correctly informed him of the immigration consequences of his guilty plea, he would have pleaded not guilty and insisted on going to trial.[5]  *See Hill*, 474 U.S. at 60, 106 S. Ct. at 371 (concluding that Hill's allegations failed to satisfy the prejudice requirement when he did not allege in his habeas petition that, had counsel correctly informed him of his parole eligibility date, he would have pleaded not guilty and insisted on going to trial and when he did not allege any special circumstances that might support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether to plead guilty).

Likewise, at the hearing on his habeas petition, instead of testifying or otherwise showing that he would have pleaded not guilty and proceeded to trial if he had been warned of the immigration consequences of his guilty plea, and instead of raising 8 U.S.C. § 1229b(b), Fuertes testified that his lawyer told him that "it was an easy case and it was just going to be one year of probation,"

"Cancellation of removal; adjustment of status," and in light of Fuertes's argument, we infer that he actually meant this section.

[5]While an inference can be drawn that Fuertes would have pleaded not guilty and insisted on going to trial from Fuertes's statement that he relied on counsel's misrepresentations to his detriment "when he gave up the defenses to which he was entitled at trial and, instead, pled guilty to the charge," Fuertes did not mention 8 U.S.C. § 1229b(b) anywhere in his habeas petition.

which he chose to believe even after the trial judge expressly told him during the plea hearing that it would be ten years of probation or between two and twenty years' confinement if he went to trial, that his lawyer did not warn him of any immigration consequences, and that he was afraid of being incarcerated. At the close of the hearing, Fuertes's argument paralleled his petition and again failed to raise 8 U.S.C. § 1229b(b). Therefore, he both forfeited his 8 U.S.C. § 1229b argument on appeal and failed to show—based on the record before us—that there was a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *See Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) ("A complaint will not be preserved if the legal basis of the complaint raised on appeal varies from the complaint made at trial.").

Even if Fuertes had raised the 8 U.S.C. § 1229b(b) argument in the trial court, however, the record does not reflect that he qualified for the exception at the time he decided to plead guilty. With regard to 8 U.S.C. § 1229b(b)(1), the attorney general may cancel the removal of an alien who is inadmissible or deportable from the United States and may adjust the alien's immigration status to that of a lawful permanent resident if the alien:

> (A)    has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

12

(B)    has been a person of good moral character during such period;[6]

(C)    has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D)    establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C.A. § 1229b(b)(1).

As pointed out by the State, when Fuertes pleaded guilty, he had only been physically present in the United States for nine years at most—from 1989 to 1998—so he would have been ineligible for relief under 8 U.S.C. § 1229b(b). Further, there was no showing at the hearing on Fuertes's habeas petition that his wife, parent, or child was a United States citizen or an alien lawfully admitted for permanent residence at the time that he pleaded guilty. To the contrary, at the habeas hearing, Fuertes said that his wife was still "waiting for permission," he did not testify about whether either of his children had been born in the United States, and he did not testify about his father's immigration status; he gave no testimony at his plea hearing about his family's status. And there was no testimony at either the plea hearing or the habeas hearing about whether

---

[6]8 U.S.C. § 1101 sets out nine classes that show lack of good moral character, including being a habitual drunkard or someone whose income is derived principally from illegal gambling activities, among other things. 8 U.S.C.A. § 1101(f) (West 2005 & Supp. 2012). However, it also provides that the fact that someone does not fall within the nine classes "shall not preclude a finding that for other reasons such person is or was not of good moral character." *Id.*

Fuertes's removal could have resulted in exceptional or extremely unusual hardship to any of those individuals.

Because the record does not reflect that Fuertes would have met 8 U.S.C. § 1229b(b)'s requirements when he made the decision to plead guilty or that he could have subsequently qualified for it, we cannot say that he showed a reasonable probability that, but for Wacker's deficient performance, he would not have pleaded guilty but instead would have insisted on going to trial. *See Hill*, 474 U.S. at 59, 106 S. Ct. at 370. Assuming, without deciding, that *Padilla* would retroactively apply to Fuertes's case, Fuertes's potential to qualify under 8 U.S.C. § 1229b(b) was unclear and uncertain when he pleaded guilty, as he could have been deported at any time before reaching the ten-year period and the record does not reflect that he had a spouse, parent, or child who was a United States citizen or lawful permanent resident who would experience exceptional or extremely unusual hardship at his removal. *See Padilla*, 130 S. Ct. at 1483 (noting that when the deportation consequences of a particular plea are unclear or uncertain, the duty of the attorney is limited to do no more than to advise the noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences). Therefore, even if Fuertes had raised his issue regarding 8 U.S.C. § 1229b(b) for the trial court to consider, we cannot say that the trial court would have abused its discretion by denying his petition. We overrule Fuertes's sole issue.

14

## IV.  Conclusion

Having overruled Fuertes's sole issue, we affirm the trial court's judgment.


PER CURIAM


PANEL:  MCCOY, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  January 31, 2013