02-11-536-CR












 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-11-00536-CR

 

 

 


 
 
 Ex parte Edgar Montes
 Fuertes
  
  
  
  
  
  
  
 
 
 §
  
 §
  
 §
  
 §
  
 §
 
 
 From the 235th District
 Court
  
 of Cooke County (97-194)
  
 January 31, 2013
  
 Per Curiam
  
 (nfp)
 
 


 

JUDGMENT

 

         
This court has considered the record on appeal in this case and holds that
there was no error in the trial court’s judgment.  It is ordered that the
judgment of the trial court is affirmed. 

 

SECOND
DISTRICT COURT OF APPEALS 

 

 

 

 

PER CURIAM

 

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT
 OF APPEALS
 SECOND
 DISTRICT OF TEXAS
 FORT
 WORTH
  
 
 


 

 

NO. 02-11-00536-CR

 

 


 
 
 EX PARTE EDGAR MONTES
 FUERTES
 
 
  
 
 
  
 
 


                                                                                                                            


 

 


 
 
  
 
 
  
 
 
  
 
 


 

 

------------

 

FROM THE 235TH
DISTRICT COURT OF COOKE COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

I.  Introduction

In a single issue, Appellant Edgar
Montes Fuertes appeals the denial of his application for writ of habeas
corpus.  We affirm.

II. 
Background

In 2011, Fuertes filed an application
for writ of habeas corpus under code of criminal procedure article 11.072,
alleging that his sexual assault conviction was void because his guilty plea
was rendered involuntary due, among other things, to ineffective assistance of
counsel.  At the hearing on Fuertes’s application, the trial court
admitted into evidence Fuertes’s sexual assault case documents, including the
pre-sentence investigation report (PSI), the reporter’s record from Fuertes’s
1998 plea hearing, and the recording of Fuertes’s 1997 confession and the
transcript of that recording.  The trial court also heard testimony from
David Wacker, the lawyer who had been appointed to
represent Fuertes in the sexual assault case, Fuertes, and Fuertes’s wife and
father.

The trial court denied Fuertes’s application
for habeas corpus relief and entered the following findings of fact pertinent
to Fuertes’s sole issue in this appeal:

3.  [Fuertes’s] attorney, David Wacker,
had no independent recollection of the plea or the case that had been resolved
nearly thirteen (13) years ago.  At the current date, he could not locate
any personal records of the case, which was court
appointed. . . . 

. . . . 

12.  The Court Reporter’s Record of the applicant’s plea of guilty
makes it clear that the defendant understood the plea bargain at the time of
his plea . . . . 

. . . .

15.  The Probation Officer, who did the Pre-sentence Investigation
for the Court testified that [Fuertes] stated to her that he had applied for
residency in the United States, but had not yet been granted and was not a
resident alien at the time of the court proceedings . . . . 

16.  [Fuertes] testified that . . . he first entered the United
States illegally and when he reentered after deportation he again entered
illegally . . . .  Mr. Fuertes had made admissions against his penal
interests prior to his guilty plea about his guilt of the sexual assault of a
child charge . . . and the fact that he was an undocumented alien . . . . 
The Court specifically finds all these statements to be true.

17.  [Fuertes’s] wife . . . testified that [Fuertes] was deported
sometime after he was placed on probation in this case and after some time he
again illegally reentered the United States . . . . 

18.  The Court finds that the record is silent as to the exact
timing or as to the reason for the deportation.

19.  The Court also finds that the record does not prove what, if
any, legal status the defendant had in the United States at the time of his
plea other than illegal.  Thus the Court finds that [Fuertes] was an undocumented
alien at the time of his plea.

20.  Based on Mr. Wacker’s testimony,
the Court finds that he told [Fuertes] only what was required by law at the
time of this plea.

. . . . 

22.  The State introduced a tape recording of [Fuertes’s] recorded
statement that was made on September 11, 1997 concerning his involvement in the
offense charged . . . the transcript of which was
introduced as State’s Exhibit #3.  This
statement included a full confession to the offense of sexual assault of a
child given to the investigating officer prior to his arrest . . . .

The trial court concluded that
Fuertes had established that Wacker failed to
properly advise him that removal from the United States was virtually certain
and presumptively mandatory, making counsel’s performance deficient.
 However, the trial court also concluded that Fuertes could not
demonstrate prejudice because he was an undocumented alien.  Further, the
trial court concluded:

The Court
finds that [Fuertes] gave a full voluntary confession to this offense to law
enforcement, the prosecution’s case was strong, the defendant benefited from
his plea in that he was released from custody and not arrested until latter
[sic].  The fact that [Fuertes] knew he had entered the country illegally
and was undocumented shows that he already had notice he was subject to
deportation.  The Court finds that the showing of actual prejudice could
not be made in this instance.

This appeal followed.

III. 
Ineffective Assistance of Counsel

In his sole issue, Fuertes argues that
the trial court applied the wrong standard when assessing prejudice and erred
by holding that he failed to show prejudice.  Specifically, Fuertes
complains that to support its conclusion on prejudice, the trial court
improperly relied upon its assessment that he would not have received a more
favorable disposition of his case had he gone to trial.

A.  Standard of Review

We review the trial court’s denial of
an application for writ of habeas corpus for an abuse of discretion.  Kniatt v. State, 206 S.W.3d 657, 664 (Tex.
Crim. App.), cert. denied, 549 U.S. 1052 (2006).  Under this
standard, we afford almost total deference to the trial court’s findings of
fact, particularly when those findings are based upon an evaluation of
credibility and demeanor.  Ex parte Amezquita, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006).
 We apply the same deference to the trial court’s application of law to
questions of fact if resolution of those issues requires an evaluation of
credibility and demeanor.  Ex parte Legrand,
291 S.W.3d 31, 35–36 (Tex. App.—Houston [14th Dist.] 2009, pet. ref’d).  If resolution of the ultimate issue turns
solely on a question of law, our review is de novo. Id. 
The habeas applicant bears the burden of establishing by a preponderance of the
evidence that the facts entitle him to relief.  Ex
parte Richardson, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). 
We will uphold the habeas court’s judgment as long as it is correct on any
theory of law applicable to the case.  Ex parte
Taylor, 36 S.W.3d 883, 886 (Tex. Crim. App. 2001); Ex parte Primrose,
950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref’d).

B.  Analysis

Because the trial court found
counsel’s performance deficient, we must evaluate whether that performance
prejudiced Fuertes when he entered his guilty plea, considering on the facts of
this case whether Fuertes showed that there was a reasonable probability that,
but for counsel’s error, he would not have pleaded guilty but instead would
have insisted on going to trial.  See Hill v. Lockhart, 474
U.S. 52, 59, 106 S. Ct. 366, 370 (1985); Johnson v. State, 169 S.W.3d
223, 231 (Tex. Crim. App. 2005), cert. denied, 546 U.S. 1181 (2006); Ex
parte Moreno, 382 S.W.3d 523, 530 (Tex. App.—Fort Worth 2012, pet. ref’d).  Our focus is whether Fuertes was deprived of
his right to a trial, not whether the trial’s outcome would have been favorable
to him.  See Johnson, 169 S.W.3d at 231.
 That is, before relief may be granted, Fuertes had to convince the trial
court that a decision to reject the plea bargain would have been rational under
the circumstances.  See Padilla v. Kentucky, 130 S. Ct.
1473, 1485 (2010); see also Hill, 474 U.S. at 59, 106 S. Ct. at 370.[2]  In determining whether a defendant
would not have pleaded guilty but for counsel’s deficient advice, a court is to
consider the circumstances surrounding the plea and the gravity of the alleged
failure material to that determination.  Ex parte
Moody, 991 S.W.2d 856, 858 (Tex. Crim. App. 1999).

1.     Fuertes’s Habeas Petition and Hearing 

In Fuertes’s habeas petition, he
argued that his guilty plea was void because (1) the events on which the
prosecution was based did not occur in the county in which he was prosecuted,
leaving the trial court without jurisdiction over his case; (2) his plea was
involuntary because of Wacker’s ineffective
assistance in advising him to plead guilty in exchange for a one year
probationary period, in telling him that pleading guilty would not affect his
immigration status, and in failing to request a translator; and (3) Fuertes’s
plea could not have been voluntary because he did not have a translator and so
could not understand the proceedings.  Because Fuertes’s sole complaint in
this appeal pertains to ineffective assistance of counsel with regard to his
immigration status, we will only address the portion of the record that
pertains to this issue.

The record reflects that Fuertes
entered the United States illegally in 1989 and was in the country illegally in
1997 when he confessed to the police that he had committed the sexual
assault.  Fuertes testified that he had confessed because he was afraid of
going to jail.

The transcript of the recording of
Fuertes’s 1997 confession at the Cooke County Sheriff’s Department reflects
that Fuertes received, understood, and waived his Miranda
warnings.  During his confession, Fuertes said that he was twenty-four
years old, acknowledged that he knew the pregnant complainant M.W., and said that he could not be the father of M.W.’s child because he had used a condom.  Fuertes
stated that M.W. told him that she was sixteen, that
he told M.W. that he was twenty-two, that he did not
know that it was illegal to have sexual intercourse with someone younger than
age seventeen, that he had only had sexual intercourse with M.W.
once, and that he was unmarried but lived with his girlfriend.[3]  Fuertes was arrested for the
offense on October 24, 1997, and charged with committing the second degree
felony of sexual assault of M.W., who was under
seventeen and not his spouse.

Fuertes pleaded guilty in 1998 to the
offense in exchange for a ten-year suspended sentence and ten years of
community supervision; the trial court entered judgment reflecting this
agreement.  Fuertes was deported to Mexico two months later and reentered
the United States illegally in 2000, and in 2003, the State filed a motion to
revoke Fuertes’s community supervision.  Fuertes spent a month and a half
in jail before returning to community supervision, and he discharged his
community supervision in 2008.

At the habeas hearing in April 2011, Wacker, Fuertes’s former appointed counsel, testified that
he did not recognize Fuertes, had no independent recollection of Fuertes’s case
from over a decade before, and remembered no conversations with Fuertes,
although he agreed that as a matter of habit, he would have gone through the
complete set of plea papers with Fuertes, including the statutory warnings
concerning immigration status, deportation, and reentry into the United States;
the plea bargain agreement; and the consequences of the plea.

Fuertes testified that Wacker never told him anything about the possible
consequences of his plea with regard to his immigration status.  However,
the plea hearing record shows that the trial judge explained to Fuertes that if
he was found guilty, the punishment range for the offense was not less than two
years’ or more than twenty years’ confinement and a fine not to exceed $10,000
and that Fuertes said that he was pleading guilty because he was guilty.
 Fuertes said, “Yes, sir,” when the trial judge asked him whether he
understood that the plea bargain was for a ten-year sentence, suspended, and
ten years of community supervision.  Fuertes told the trial judge that he
was not a United States citizen and said, “yes,” when the trial judge asked,
“You understand, do you not, that a conviction for an offense like this could
result in your being deported, or denied admission into the United
States?”  At the plea hearing, Fuertes agreed that his attorney had
explained that to him.

During the habeas hearing, Fuertes
testified that his wife was not a United States citizen or legal resident but
said that she was “waiting for permission.”  He did not testify with
regard to his children’s citizenship—by the time of the hearing on the habeas
petition, Fuertes had two children—or his father’s citizenship or residency
status, although Fuertes did state that his father had applied for a work
permit for Fuertes in 1989, and that it had been temporarily approved in 1998.

2.     8 U.S.C.
§ 1229b(b)

On appeal, Fuertes argues that but
for Wacker’s failure to inform him that his guilty
plea would render him ineligible for legal permanent residency, he would not
have pleaded guilty but instead would have insisted on going to trial, and he
complains that the trial court never addressed this question.  Fuertes
acknowledges that the plea itself is not what made him inadmissible or
deportable; rather, he argues that his plea affected his ability to seek a subsequent
cancellation of removal under 8 U.S.C. § 1229b(b)(1)
because it called into question whether he had been “a person of good moral
character” during that time and that he would have been entitled to apply for
relief under 8 U.S.C. § 1229b
but for his plea.[4]
 See 8 U.S.C.A. § 1229b
(West 2005 & Supp. 2012).

We note first that Fuertes never
expressly placed this particular issue before the trial court.  See
Tex. R. App. P. 33.1.  That is, in his habeas application, Fuertes neither
made any mention of 8 U.S.C. § 1229b
nor specifically alleged that had counsel correctly informed him of the
immigration consequences of his guilty plea, he would have pleaded not guilty
and insisted on going to trial.[5] 
See Hill, 474 U.S. at 60, 106 S. Ct. at 371 (concluding that Hill’s
allegations failed to satisfy the prejudice requirement when he did not allege
in his habeas petition that, had counsel correctly informed him of his parole
eligibility date, he would have pleaded not guilty and insisted on going to
trial and when he did not allege any special circumstances that might support
the conclusion that he placed particular emphasis on his parole eligibility in
deciding whether to plead guilty).

Likewise, at the hearing on his
habeas petition, instead of testifying or otherwise showing that he would have
pleaded not guilty and proceeded to trial if he had been warned of the
immigration consequences of his guilty plea, and instead of raising 8 U.S.C. § 1229b(b), Fuertes
testified that his lawyer told him that “it was an easy case and it was just
going to be one year of probation,” which he chose to believe even after the
trial judge expressly told him during the plea hearing that it would be ten
years of probation or between two and twenty years’ confinement if he went to
trial, that his lawyer did not warn him of any immigration consequences, and
that he was afraid of being incarcerated.  At the close of the hearing,
Fuertes’s argument paralleled his petition and again failed to raise 8 U.S.C. § 1229b(b).  Therefore, he both forfeited his 8 U.S.C. § 1229b argument on appeal
and failed to show—based on the record before us—that there was a reasonable
probability that, but for counsel’s errors, he would not have pleaded guilty
and would have insisted on going to trial.  See Lovill
v. State, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009) (“A complaint will
not be preserved if the legal basis of the complaint raised on appeal varies
from the complaint made at trial.”).

Even if Fuertes had raised the 8 U.S.C. § 1229b(b) argument in the trial court, however, the record does
not reflect that he qualified for the exception at the time he decided to plead
guilty.  With regard to 8 U.S.C. § 1229b(b)(1), the attorney general may cancel the removal of
an alien who is inadmissible or deportable from the United States and may
adjust the alien’s immigration status to that of a lawful permanent resident if
the alien:

(A)    has been physically present in the United States for a
continuous period of not less than 10 years immediately preceding the date of
such application;

(B)    has been a person of good moral character during such
period;[[6]

(C)   has not
been convicted of an offense under section 1182(a)(2), 1227(a)(2), or
1227(a)(3) of this title, subject to paragraph (5); and

(D)   establishes that removal would result in exceptional and
extremely unusual hardship to the alien’s spouse, parent, or child, who is a
citizen of the United States or an alien lawfully admitted for permanent
residence.

8 U.S.C.A.
§ 1229b(b)(1).

As pointed out by the State, when
Fuertes pleaded guilty, he had only been physically present in the United
States for nine years at most—from 1989 to 1998—so he would have been
ineligible for relief under 8 U.S.C. § 1229b(b).  Further, there was no showing at the
hearing on Fuertes’s habeas petition that his wife, parent, or child was a
United States citizen or an alien lawfully admitted for permanent residence at
the time that he pleaded guilty.  To the contrary, at the habeas hearing,
Fuertes said that his wife was still “waiting for permission,” he did not
testify about whether either of his children had been born in the United
States, and he did not testify about his father’s immigration status; he gave
no testimony at his plea hearing about his family’s status.  And there was
no testimony at either the plea hearing or the habeas hearing about whether
Fuertes’s removal could have resulted in exceptional or extremely unusual
hardship to any of those individuals.

Because the record does not reflect
that Fuertes would have met 8 U.S.C. § 1229b(b)’s
requirements when he made the decision to plead guilty or that he could have
subsequently qualified for it, we cannot say that he showed a reasonable
probability that, but for Wacker’s deficient
performance, he would not have pleaded guilty but instead would have insisted
on going to trial.  See Hill, 474 U.S. at 59, 106
S. Ct. at 370.  Assuming, without deciding, that Padilla
would retroactively apply to Fuertes’s case, Fuertes’s potential to qualify
under 8 U.S.C. § 1229b(b) was unclear and
uncertain when he pleaded guilty, as he could have been deported at any time
before reaching the ten-year period and the record does not reflect that he had
a spouse, parent, or child who was a United States citizen or lawful permanent
resident who would experience exceptional or extremely unusual hardship at his
removal.  See Padilla, 130 S. Ct. at 1483 (noting that when the
deportation consequences of a particular plea are unclear or uncertain, the
duty of the attorney is limited to do no more than to advise the noncitizen
client that pending criminal charges may carry a risk of adverse immigration
consequences).  Therefore, even if Fuertes had raised his issue regarding
8 U.S.C. § 1229b(b) for the trial court to consider, we cannot say that the
trial court would have abused its discretion by denying his petition.  We
overrule Fuertes’s sole issue.

IV. 
Conclusion

Having overruled Fuertes’s sole
issue, we affirm the trial court’s judgment.

 

 

                            
                                               
PER CURIAM

 

 

PANEL:  MCCOY, GARDNER,
and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 31,
2013














[1]See
Tex. R. App. P. 47.4.





[2]Whether
Padilla applies retroactively to Fuertes’s plea is an open question that
we need not reach here.  See Moreno, 382 S.W.3d at
527 n.7.





[3]The
PSI reflects that Fuertes and his “girlfriend” Lagordia
had a six-year-old child at the time.  At the hearing on the habeas
petition, Lagordia testified that she and Fuertes had
been married for sixteen years, since approximately 1995.  Fuertes’s
father also testified that Fuertes was married in 1997 and that Fuertes’s child
with Lagordia was between four and six years old at
the time.





[4]Fuertes
states that the applicable statutory provision is 8 U.S.C.
§ 1226b(b); however, there is no such provision.  8 U.S.C. § 1229b is entitled
“Cancellation of removal; adjustment of status,” and in light of Fuertes’s
argument, we infer that he actually meant this section.





[5]While
an inference can be drawn that Fuertes would have pleaded not guilty and
insisted on going to trial from Fuertes’s statement that he relied on counsel’s
misrepresentations to his detriment “when he gave up the defenses to which he
was entitled at trial and, instead, pled guilty to the charge,” Fuertes did not
mention 8 U.S.C. § 1229b(b) anywhere in his
habeas petition.





[6]8
U.S.C. § 1101 sets out nine classes that show lack of
good moral character, including being a habitual drunkard or someone whose
income is derived principally from illegal gambling activities, among other
things.  8 U.S.C.A.
§ 1101(f) (West 2005 & Supp. 2012).  However, it also
provides that the fact that someone does not fall within the nine classes
“shall not preclude a finding that for other reasons such person is or was not
of good moral character.”  Id.