

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-19-00408-CR

---

CHRISTOPHER LEE BRYAN, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CR20289

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

Christopher Lee Bryan appeals from his conviction for burglary of a habitation with intent to commit a felony. He asserts in his sole issue on appeal that the trial court erred by refusing to strike the direct examination testimony of a witness who invoked the Fifth Amendment during cross-examination. We affirm.

**BACKGROUND**

**The Offense**

**The Victims**

Brent Dixon testified that he was at a home being rented by his nephew, Rhett Barclay, during the night of August 7, 2017. Dixon, Barclay and a third man, Christopher Bartholomew, were lying on couches in the living room when Dixon got up to go into the kitchen. While there, he saw a flashlight beam coming from under one of the bedroom doors. Dixon opened the door and saw two men wearing masks. One was holding a pistol and the other was holding a rifle. One of the masked men shouted at Dixon to get back. Dixon was shot three times as he tried to flee.

Bartholomew and Barclay both testified that they heard a voice saying to "get back," followed by gunshots from the back portion of the house. Barclay tried to run but was shot in the leg. Bartholomew escaped unharmed and took Barclay's truck to get help. None of the men in the house could identify the intruders.

**The Burglars**

Kade Smith testified that he had suggested to Jackson Huggins and appellant Christopher Bryan that the three of them go to Barclay's house to "take" money and drugs. Smith asked Matthew Brown if they could use his car, and Brown, knowing that they intended to commit a robbery, agreed to drive them. The four drove to Barclay's house, and Brown and Smith stayed in the car while Bryan and Huggins went inside. Bryan carried a Glock pistol, and Huggins carried a .22 rifle.

Bryan and Huggins were in the house only a short time before Smith and Brown heard gunshots and screaming. Bryan and Huggins ran back to the car and, as they drove away, Bryan said that he thought he had killed someone. Smith later told a sheriff's investigator that Bryan had shot Dixon and Huggins had shot Barclay.

**The Investigation**

The sheriff's department obtained a search warrant and discovered a loaded Glock pistol under the driver's seat of Bryan's truck. Only Bryan's fingerprints were found on the gun, and a forensic examination matched it to shell casings found at the scene of the shooting. Bryan admitted to an investigator that he had gone into the house but said that the homeowner shot first. Bryan was also recorded telling his mother and grandmother that the gun he used in the crime was under the seat of his truck and asking them to get rid of it.

**Invocation of the Fifth Amendment**

Dixon—the victim who discovered the burglars and who was shot three times—testified on direct examination that he was a convicted felon and that it was illegal for him to possess a firearm. When Bryan's attorney asked him on cross-examination whether he had recently been arrested with a firearm, Dixon invoked his Fifth Amendment[1] right against self-incrimination. He again invoked the Fifth Amendment when the defense asked whether he had been indicted for having a firearm at a convenience store. Defense counsel then stated, "Your Honor, we're going to instruct the jury to disregard all this witness' testimony. He's not answering the questions. You can't just invoke the rights when you want to." The court overruled the objection.

The parties later engaged in a bench conference concerning the defense's effort to discredit Dixon's testimony that he had computer software contracts with the Department of Defense. During this bench conference, defense counsel stated that the jury should be permitted to hear that Dixon, a convicted felon, had committed a new felony offense for which he had not been indicted. The court responded that Dixon was entitled to plead the Fifth Amendment and then asked Dixon if he was represented by an attorney. Dixon responded that he was and the court stated that it

---

[1]U.S. Const. amend. V.

would be improper to question him further about the new offense unless he discussed it first with his attorney.

Nevertheless, the State raised the issue again during redirect examination by reminding Dixon that he had been asked about a recent arrest and asking him whether he and the State had discussed a plea deal or whether the State had promised him anything relating to any new charges. Dixon responded that there had been no such discussions. The defense followed up that questioning by asking Dixon whether he wanted the jury to believe that it was just coincidence that he had not been indicted on the new felony charge. Dixon replied that he did not know how to answer that question and defense counsel moved on to another topic.

**The Verdict and Sentence**

The jury convicted Bryan of burglary of a habitation with intent to commit robbery or aggravated assault with a deadly weapon. It found that Bryan used or exhibited a deadly weapon in the course of committing the offense and assessed punishment at twenty-eight years' confinement. The trial court entered judgment in accordance with the verdict.

## DISCUSSION

The common remedy when a witness invokes the Fifth Amendment on cross-examination is "to strike the witness's direct testimony and instruct the jury to disregard the testimony." *Ex parte Primrose*, 950 S.W.2d 775, 779 (Tex. App.—Fort Worth 1997, pet ref'd). Bryan contends that the trial court violated his Sixth

Amendment[2] right to confront his accusers when it refused to implement this remedy after Dixon invoked the Fifth Amendment. More specifically, Bryan contends that his inability to cross-examine Dixon about his recent arrest prevented him from demonstrating Dixon's vulnerable relationship with the State and his motive and bias in testifying. *See Carroll v. State*, 916 S.W.2d 494, 500 (Tex. Crim. App. 1996).

The State argues that Bryan failed to preserve error because he did not lodge a proper objection and did not inform the trial court that the purpose of his line of questioning was to demonstrate Dixon's bias or motive for testifying. We agree that Bryan's objection was not a model of clarity. Even so, we believe he sufficiently brought to the trial court's attention the complaint that his right to confront his accuser was violated by Dixon's refusal to answer his questions. *See* Tex. R. App. P. 33.1(a) (providing that error preservation requires making court aware of complaint).

Although we conclude that Bryan adequately preserved his confrontation clause complaint, it is not necessary to determine the merits of that complaint because Bryan has not demonstrated that the asserted error is reversible.

Confrontation clause errors are subject to harmless-error analysis. *Rubio v. State*, 241 S.W.3d 1, 3 (Tex. Crim. App. 2007); *Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006). "The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might

---

[2]U.S. Const. amend. VI.

6

nonetheless say that the error was harmless beyond a reasonable doubt." *Davis*, 203 S.W.3d at 850 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438 (1986)); *see* Tex. R. App. P. 44.2.

Assuming that the damaging potential of Bryan's cross-examination of Dixon were fully realized, the record still contains overwhelming evidence of Bryan's guilt:

- Two other occupants of the burglarized home testified that intruders shot Dixon and Barclay.

- Two of Bryan's accomplices testified that Bryan went into the house carrying a Glock pistol and with the intention of stealing drugs and money.

- Both accomplices also testified that they heard gunshots and Bryan later told them he thought he had killed someone.

- One of Bryan's accomplices told a sheriff's investigator that Bryan had shot Dixon.

- A firearms examiner determined that the bullet casings found at the scene were fired from the Glock pistol found beneath the driver's seat of Bryan's truck, and a fingerprint examiner testified that the pistol had only Bryan's fingerprints on it.

- Bryan admitted to a sheriff's investigator that he had gone into the home but said that the homeowner shot first.

- Bryan told his mother and grandmother that the gun he had used in the crime was under the seat of his truck and asked them to get rid of it.

The evidence of Bryan's guilt, even excluding Dixon's testimony, is overwhelming. We have no difficulty concluding that any error in refusing to strike Dixon's testimony was harmless beyond a reasonable doubt. *See Davis*, 203 S.W.3d at 850; Tex. R. App. P. 44.2. Bryan's sole issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 29, 2021