**Opinion issued August 16, 2016**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-15-00719-CR

———————————

## EX PARTE LEE AUGUST LUDTKE, Appellant

On Appeal from the 174th District Court
Harris County, Texas
Trial Court Case No. 1329042-A

## MEMORANDUM OPINION

Appellant, Lee August Ludtke, challenges the trial court's order denying his application for a writ of habeas corpus.[1] In his sole issue, appellant contends that the trial court erred in denying his requested relief, which he asserts on the ground

---

[1]  *See* TEX. CODE CRIM. PROC. ANN. art. 11.072, § 8 (Vernon 2015).

that his trial counsel rendered ineffective assistance, from a judgment deferring adjudication of his guilt of the state-jail-felony offense of theft of property valued at more than $1,500.00 but less than $20,000.00.[2]

We affirm the order of the trial court.

## Background

In his application, appellant alleges that in August 2011, a Houston Police Department ("HPD") officer was dispatched to investigate a report of a burglary of a motor vehicle. The complainant, Lael Alexander, told the officer that two briefcases containing "tablet and phone 'prototypes,'" with a value of "$10,000 and $7800," had been stolen from the backseat of his pickup truck.[3]

Subsequently, appellant purchased from Marqus Eric Narducci, whom appellant knew as "Paul," "two tablet computers" for $40.00. On November 30, 2011, Narducci, who unbeknownst to appellant was on community supervision for the felony offense of theft and had worked as a confidential informant for HPD, contacted an HPD officer to report that appellant "was in possession of 'IPAD prototypes' for sale for $20 each." Narducci then contacted appellant, stating that

---

[2]    *See* TEX. PENAL CODE ANN. § 31.03(a), (b) (Vernon Supp. 2015). Under the law applicable at the time, theft was a state-jail felony if the value of the property stolen was $1,500.00 or more but less than $20,000.00. *See* Act of May 29, 2011, 82nd Leg., R.S., ch. 1234, § 21, 2011 Tex. Gen. Laws 3302, 3311 (codified at TEX. PENAL CODE ANN. § 31.03(e)(4)(A)).

[3]    In his offense report, HPD Officer J. Moses also notes that Alexander reported that a .40 caliber handgun was also stolen from his truck.

"he needed the tablets back . . . and arranged to meet him to process a refund." However, Narducci had represented to HPD officers that he "was purchasing stolen tablets" from appellant. At the "buy," the officers arrested appellant after "Narducci gave him money for the tablets." Upon their search of appellant's car, the officers removed a .40 caliber handgun.

A Harris County Grand Jury subsequently issued a true bill of indictment, accusing appellant of committing the state-jail-felony offense of theft of property valued at more than $1,500.00 but less than $20,000.00. And the State filed against appellant an information, accusing him of committing the misdemeanor offense of unlawfully carrying a weapon. Appellant hired an attorney to represent him in court. In the theft case, the State, in exchange for his plea of guilty, offered to defer adjudication of appellant's guilt and place him on community supervision for two years. After appellant accepted the State's offer and pleaded guilty on April 23, 2012, the State dismissed the misdemeanor carrying-a-weapon case. Appellant successfully completed his community supervision and was discharged in September 2013.

In March 2015, appellant filed his application for a writ of habeas corpus, contending that he had entered his guilty plea involuntarily and unknowingly. He argues that his trial counsel rendered ineffective assistance because, before advising appellant to plead guilty, counsel did not properly investigate the facts or properly

3

advise appellant about the applicable law and defenses. Appellant asserts that trial counsel did not verify that the computer tablets that appellant sold to Narducci are the same tablets that were reported stolen by the complainant in August 2011; confirm the tablets' value; and investigate the criminal backgrounds of the complainant and Narducci. Appellant also asserts that trial counsel did not properly advise him about "the proper mental state" for the theft offense. Finally, he asserts that he would not have pleaded guilty had his trial counsel properly investigated the case and properly advised him about the law and his defenses.

Attached to appellant's application is the pertinent HPD offense report. In the report, HPD Officer J. Moses states that on August 22, 2011, he was dispatched to the scene of a burglary of a motor vehicle. He spoke with the complainant, who told him that he had parked his pickup truck in the parking lot of "Sam's Boat" at about 7:50 p.m., leaving two briefcases on the back seat. When the complainant returned to his truck at about 10:10 p.m., he saw that the door lock on the driver's side of the truck had been "punched out" and the briefcases and their contents had been taken from the truck. The contents included a .40-caliber Springfield handgun and several "prototype" computer tablets, including four tablets with a value of $10,000.00 each and a fifth tablet with a value of $7,800.00. The complainant further told Moses that "he felt like he was targeted because so many prototype units were stolen."

4

HPD Officer L. Garcia supplemented the offense report on December 2, 2011. Garcia states that on November 30, 2011, Narducci told him that he had "made contact with [appellant] concerning the purchase of stolen property, namely iPad notebooks," appellant was willing to sell three iPad notebooks for $20.00 each, and appellant "didn't know what he had in his possession." At that time, the "iPad notebooks [were] worth [$10,000.00]," were "prototype[s]," and were "not for sale and not [to be] distributed to the general public as of yet." The next day, Narducci advised Garcia that appellant "was selling the three iPads for $40.00 gas money" and the "meet location" was a restaurant on the Southwest Freeway. Narducci and HPD undercover officers, who "were looking [to] arrest [appellant] after the buy was completed," went to the restaurant. After Narducci returned to his car with "two iPads" that he bought from appellant for $40.00, the HPD officers arrested appellant. The officers then searched appellant's car and recovered a .40-caliber Springfield handgun with one magazine containing seven live rounds.

Officer Garcia and HPD Officer G. Gutierrez then met with appellant at an HPD substation. After Garcia advised appellant of his legal rights, appellant stated that he understood his rights and "was willing to talk." Garcia and Gutierrez told appellant that they knew that Narducci and another individual, identified as "Westley," had been supplying "stolen property" to appellant. After appellant denied "any involvement in the theft of property," Garcia showed him "five separate

5

case numbers" associated with appellant, Narducci, and Westley. Appellant then "finally admitted to buying four laptop computer[s] from Westley and four from Narducci." Appellant also admitted to "having been involved in [a] theft [at] Klein [High] School, where 21 to 27 laptops [had been] stolen." Appellant then advised Garcia about "other suspects that [had] provided [appellant] with stolen property," his willingness "to work with the police," and his desire to avoid being incarcerated. Garcia states that the prototype iPads, which had a value of $10,000.00 dollars each had been "stolen from the [complainant's] truck," among "approx[imately] 10 iPads in [a] briefcase." HPD officers also arrested Narducci and Westley in the case.

Also attached to appellant's application are his affidavit and the affidavit of his mother. In his affidavit, appellant testified:

> While I was in college, I would buy computers from people on Craigslist and then resell them on Ebay for a small profit.

> I started buying stuff from a guy I knew as Paul in early 2011.

> A couple of days before I was arrested, I went to Paul to buy LCD screens that he had advertised on Craigslist. He then asked if I wanted to buy two tablets. I wasn't interested but he was pushy so I offered $40. He accepted.

> A couple of days later, Paul called and asked if he could buy the tablets back because he sold them too cheap to me. I said fine and agreed to meet him halfway between us. That's when I was arrested in the parking lot.

> My parents hired Ralph Alvarez to represent me. We had few discussions about the case. He told me I would be convicted as a party

6

to receiving stolen goods. I did not understand that to be convicted I had to know the goods were stolen.

Mr. Alvarez never showed me the offense report. He never told me the person I knew as Paul was [Narducci] and that he was a confidential informant trying to curry favor with the DA's office to get out of trouble for his own theft case. I was never advised about a bias defense.

I did not know the complainant . . . had a criminal history when I pleaded, or that my lawyer could have argued that the value of the tablets did not meet the felony requirement.

We would go to court, and finally one day, my lawyer told me that if I did not take the deferred adjudication probation then I would go to jail. I was scared so I took the deal.

I would not have pleaded guilty had I known of my possible defenses, including challenging the complainant's story; pursuing a bias defense with Narducci; investigating the value of the tablets; and investigating whether the tablets in my case were even the ones taken from [the complainant]. I definitely would not have pleaded guilty had I known that I would have to know that the goods were stolen instead of just being in possession of stolen goods.

In her affidavit, appellant's mother testified that she "was at home when [appellant] spoke with the seller about returning the tablets" and the transaction seemed legitimate. At the time, she "thought it was weird" that the seller wanted the tablets back, but "[i]n retrospect, it was a set-up." Appellant's mother "was at every court setting," and trial counsel "was always one of the last lawyers and then would just reset the case" until "the prosecutor said no more resetting." She further testified:

7

It was communicated to [appellant] that if he did not take probation then he would go to prison.

[She and appellant] did not understand that [he] had to know the goods were stolen. [They] thought being in possession of stolen goods was enough to be convicted.

[Appellant's] lawyer never advised [them] about any defenses to the case.

Also attached to appellant's application is a December 2, 2011 "D.A. Intake Management System Probable Cause Information." The fact summary within states that appellant met with "the confidential informant" to sell him "two notebook iPads (similar)," which appellant had in his possession valued "at $10,000.00 ea[ch] due to them being a proto-type notebook." The summary reveals that the informant knew appellant from previous dealings and knew that he had previously sold stolen electronics, including laptops, cellular telephones, and notebooks. The summary further reveals that the informant was "working with the courts to work off his case."

Finally, attached to appellant's application is certain information about Narducci and the complainant. Information about the complainant includes copies of website pages, which contain complaints about the complainant and his businesses, and business records, which reflect theft and assault charges. Information about Narducci includes a list of "Activities" from the Harris County district clerk's web site and an excerpt from an HPD offense report in a motor-vehicle-theft case. The offense report, dated October 7, 2011, indicates that

8

Narducci was a suspect in that case and although HPD officers had temporarily used him as a possible information source, they would no longer use him as a resource because he had been placed on community supervision in the case.

No witnesses testified at the hearing on appellant's application. However, the trial court, without objection, admitted into evidence the affidavit of appellant's trial counsel. In his affidavit, trial counsel testified that in December 2011, appellant hired him to represent him in court for the state-jail-felony offense of theft and the misdemeanor offense of unlawfully carrying a weapon. And counsel represented appellant through the conclusion of the plea proceeding in April 2012. Trial counsel further testified:

> To prepare for these cases, I read the offense report and viewed the entire state's file in both misdemeanor and felony court. I learned that the two offenses were out of the same transaction. When I first met with [appellant], he told me that he was very concerned about going to prison. I told [him] that I would do everything that I could to resolve the cases in a manner favorable to him.
>
> When I read the offense report relating to the incident, I observed that Officer Moses with the Houston Police Department had been dispatched to Sam's Boat located at 5720 Richmond Avenue in Houston on August 22, 2011 regarding a burglary of a motor vehicle that occurred between 7:50 pm and 10:10 pm. I observed that Officer Moses reported that he had spoken with [the complainant] in this case. Officer Le reported that the Complainant had told him that 5 prototype tablet computers valued at $10,000 had been stolen out of the Complainant's vehicle as it was parked in the parking lot of Sam's Boat. I then observed that Officer Garcia, a detective in the Auto Theft division had been assigned the case for follow up. Officer Garcia documented that [Narducci] a person the Houston Police Department used as a confidential informant had come to him and told him that

9

[appellant] was trying to sell some stolen tablet computers. Officer Garcia documented that Mr. Narducci told him that [appellant] was trying to sell the tablets for $20 each. I further read that on December 1, 2011 at approximately 1:00 pm, Officer Garcia received a call from Mr. Narducci who said [appellant] was selling 3 tablets for $40 and they were going to meet at the Hooters at 2500 Southwest Freeway to make the exchange. Officer Garcia documented that on December 2, 2011 at 2:58 pm Mr. Narducci purchased the tablets from [appellant] for $40. Officer Garcia reported that [appellant] was then arrested and during a search of his vehicle they located a 40 caliber Springfield pistol. *Officer Garcia then notated that he interviewed [appellant] and [he] admitted that he had been involved in buying stolen computers from the confidential informant and another individual and admitted that he was involved in a separate theft where 21-27 laptops were stolen from Klein School.*

I spoke to [appellant] about the case and he told me that he had purchased the tablets but had no proof of such purchase. The prosecutor offered [appellant] a 2 year Deferred Adjudication on the case which is the minimum on a felony case. I also negotiated with the misdemeanor prosecutor who agreed to dismiss the Unlawfully Carrying a Weapon case against [appellant] in exchange for a plea on the felony case. I told [appellant] that he could accept the prosecutor's offer or have a trial to the Judge or the Jury. [Appellant] agreed to accept the prosecutor's offer of Deferred Adjudication rather than take a risk going to trial. [Appellant's] plea of guilty was made knowingly and voluntarily.

(Emphasis added.)

The trial court denied appellant's requested habeas corpus relief and signed findings of fact and conclusions of law. It found, based on trial counsel's "credible affidavit," that he had "conducted an investigation that included reviewing the State's file and the offense report"; he had "discussed the case and the applicable law with [appellant]"; appellant's "plea was voluntarily and knowingly given"; and trial counsel "believe[d] that [appellant's] plea was voluntarily and knowingly

given." The trial court further found that it had properly admonished appellant "as to the charge against him, the range of punishment, and the consequences of his plea." Based on its fact findings, the trial court concluded:

1. [Appellant] fails to show that counsel's conduct fell below an objective standard of reasonableness and that, but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different.

2. The totality of the representation afforded [appellant] was sufficient to protect his right to reasonably effective assistance of counsel in the primary case[.]

3. [Appellant] fails to show that his initial guilty plea was unlawfully induced, made involuntarily, or made without an understanding of the nature of the charge against him and the consequences of his plea in accordance with [TEX. CODE CRIM. PROC. ANN. art. 26.13].

4. [Appellant] fails to overcome the presumption that his initial guilty plea was knowingly and voluntarily made.

5. In all things, [appellant] has failed to demonstrate that his conviction was improperly obtained[.]

## Standard of Review

An applicant seeking post-conviction habeas corpus relief must prove his claims by a preponderance of the evidence. *Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002). In reviewing a trial court's decision to deny habeas corpus relief, we view the facts in the light most favorable to the trial court's ruling. *Ex parte Peterson*, 117 S.W.3d 804, 819 (Tex. Crim. App. 2003), *overruled in part on other grounds by Ex parte Lewis*, 219 S.W.3d 336 (Tex. Crim. App. 2007). We

11

afford almost total deference to the court's findings of fact that are supported by the record, especially when the trial court's fact findings are based upon an evaluation of credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). We afford the same level of deference to the trial court's rulings on "applications of law to fact questions" if the resolution of those questions turn on an evaluation of credibility and demeanor. *Ex parte Peterson*, 117 S.W.3d at 819. In such instances, we use an abuse-of-discretion standard. *See Ex parte Garcia*, 353 S.W.3d 785, 787 (Tex. Crim. App. 2011). However, if the resolution of those ultimate questions turns on an application of legal standards absent any credibility issue, we review the determination de novo. *See Ex parte Peterson*, 117 S.W.3d at 819. We will affirm the trial court's decision if it is correct on any theory of law applicable to the case. *Ex parte Primrose*, 950 S.W.2d 775, 778 (Tex. App.—Fort Worth 1997, pet. ref'd).

**Ineffective Assistance of Counsel**

In his sole issue, appellant argues that the trial court erred in denying him habeas corpus relief because, based on his trial counsel's ineffective assistance, he entered his plea unknowingly and involuntarily. He asserts that his trial counsel advised him to plead guilty without conducting a reasonable investigation, i.e., determining whether the computer tablets that he sold to Narducci are the same tablets that were reported stolen by the complainant; confirming the value of the tablets; and investigating the criminal backgrounds of the complainant and Narducci. And he asserts that "[t]he evidence that was not investigated would have changed the outcome" of his decision to plead guilty.

To be valid, a plea must be entered voluntarily, knowingly, and intelligently. TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2015); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008). A plea is not entered voluntarily and knowingly if made as the result of ineffective assistance of counsel. *Ulloa v. State*, 370 S.W.3d 766, 771 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

To prove a claim of ineffective assistance of counsel, appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068

13

(1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006). Appellant has the burden to establish both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

In regard to guilty pleas, the focus of our prejudice inquiry is "on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370 (1985). Appellant must show that (1) his trial counsel's advice to plead guilty was not within the wide range of competence required of a criminal defense attorney and (2) there is a reasonable probability that, but for counsel's errors, he would have pleaded "not guilty" and insisted on a trial. *Id.*; *Lopez v. State*, 428 S.W.3d 271, 278 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Ex parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)).

14

Trial counsel had a duty to provide advice to his client about what plea to enter and that advice should have been informed by an adequate investigation of the facts of the case or based on a reasonable decision that an investigation was unnecessary. *Ex parte Harrington*, 310 S.W.3d 452, 458 (Tex. Crim. App. 2010) (citing *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009); *Goodspeed v. State*, 187 S.W.3d 390, 392–93 (Tex. Crim. App. 2005)); *see Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066) (stating trial counsel's duty is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"). Thus, counsel had an obligation to conduct a legal and factual investigation and seek out and interview witnesses. *See Ex parte Welborn*, 785 S.W.2d 391, 394 (Tex. Crim. App. 1990). However, "[a] claim, for ineffective assistance based on trial counsel's general failure to investigate the facts of the case fails absent a showing of what the investigation would have revealed that reasonably could have changed the result of the case." *Stokes v. State*, 298 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (citing *Cooks v. State*, 240 S.W.3d 906, 912 (Tex. Crim. App. 2007)).

Here, the evidence supports the trial court's findings and conclusions that trial counsel conducted an investigation that included reviewing the State's file and the offense report. Trial counsel's affidavit testimony reflects that he spoke with appellant about the case, reviewed the State's files in the misdemeanor and felony

15

cases, and read the HPD offense report. The offense report indicates that the value of the computer tablets was within the range for the state-jail-felony offense of theft and they were the ones stolen from the complainant's truck in August 2011. The report further indicates that appellant, when arrested, admitted that he knew Narducci, previously had received stolen laptops from him and a person identified as "Westley," and identified others who had provided him with stolen property. Additionally, appellant admitted to his involvement in a theft of laptops from Klein High School. Further, the record reveals that trial counsel actually reviewed the State's file, and the State's "Probable Cause Information" indicates that Narducci was "working with the courts to work off his case."

Appellant argues that trial counsel did not properly advise him about the law applicable to his case because, "[t]o be convicted under a theory of theft for possessing stolen goods, a defendant must know the goods are stolen," and he "did not know the goods were stolen" and did not understand that to be convicted he had to know that they had been stolen. Appellant asserts that he pleaded guilty only because counsel misadvised him about the applicable law. And appellant, in his affidavit, testified that although his trial counsel advised him that he "would be convicted as a party to receiving stolen goods," he "did not understand that to be convicted" he "had to know the goods were stolen." The trial court found and concluded that trial counsel did discuss the case and applicable law with appellant

16

and appellant failed to show that he pleaded guilty "without an understanding of the nature of the charge against him and the consequences of his plea."

Appellant's argument is premised on his assertion that he did not know that the tablets that he bought from, and sold back to Narducci, were stolen. A person commits the offense of theft "if he unlawfully appropriates property with intent to deprive the owner of property." TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2015). "Appropriate" means "to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01(4)(B). Appropriation of property is unlawful if (1) it is without the owner's effective consent, or (2) the property is stolen and the actor appropriates the property knowing it was stolen by another. *Id.* § 31.03(b)(1)–(2). "Knowledge that property was stolen can be shown by circumstantial evidence." *Uyamadu v. State*, 359 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Chudleigh v. State*, 540 S.W.2d 314, 317 (Tex. Crim. App. 1976)). Again, the HPD offense report reveals that appellant admitted that he knew Narducci, had previously received stolen laptops from him and a person identified as "Westley," identified others who had provided him with stolen property, and had previously been involved in a theft of laptops from Klein High School. In his affidavit, appellant's trial counsel makes specific reference to his review of this evidence. And from this circumstantial evidence, it can reasonably be inferred that

17

appellant knew that the tablets that he bought from, and sold back to, Narducci were stolen.

Moreover, the record presented does not include the indictment or other charging instrument and, thus, does not show what specific elements of theft were alleged. *See Chavez v. State*, 843 S.W.2d 586, 588 (Tex. Crim. App. 1992) (stating, to plead theft, State only has to allege accused appropriated property unlawfully with intent to deprive owner of it). Further, there is no evidence in the record that trial counsel misadvised appellant as to the elements of the offense of theft or "the proper mental state" for the charge. As noted above, the record does demonstrate that trial counsel in fact reviewed the HPD offense report, which includes not only the facts of appellant's arrest, but also his discussion with, and admissions to, the HPD officers. And appellant's trial counsel discussed those facts with appellant.

Considering the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's findings of fact supported by the record, we conclude that appellant has not met the first prong of *Strickland*. Accordingly, we hold that the trial court did not err in denying appellant's requested habeas corpus relief.

We overrule appellant's sole issue.

## Conclusion

We affirm the order of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.

Do not publish.   Tex. R. App. P. 47.2(b).

19